IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In re Crash of Aircraft N93PC | ) | No. 3:15-cv-0112-HRH |
| | ) | [Consolidated with |
| on July 7, 2013, at Soldotna, Alaska | ) | No. 3:15-cv-0113-HRH and |
| | ) | No. 3:15-cv-0115-HRH] |

O R D E R

RAC's Motion in Limine No. 3 (Coffman)

Defendant Recon Air Corporation moves to exclude certain testimony of plaintiffs' expert, Arthur Lee Coffman.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take-off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict liability and breach of warranty claims against Recon Air.

The subject aircraft was modified in 2010. The modifications were approved under Supplemental Type Certificates (STCs) and included a Texas Turbine Engine Conversion

---

[1]Docket No. 340.

[2]Docket Nos. 349 and 351.

-1-

and a Baron Short Takeoff & Landing (STOL) kit. The engine conversion included the installation of a Honeywell TPE331 turbine engine. Recon Air installed both the engine and the Baron STOL kit. The Baron STOL Kit STC includes the following:

> This approval is only applicable to type/model of aeronautical product specified therein. Prior to incorporating this modification, the installer shall establish that the interrelationship between this change and any other modification(s) incorporated will not adversely affect the airworthiness of the modified product.[3]

The Texas Turbine engine conversion STC includes the following:

> This alteration is compatible with approved Landplane and Seaplane configurations of the DHC-3 aircraft. Compatibility of this design change with previously approved modifications must be determined by the installer.[4]

Plaintiffs contend that Recon Air "failed to properly calculate the correct weight and balance of the aircraft, failing to account for the cumulative effects on the center of gravity of the aircraft with all of the modifications."[5]

---

[3]Supplemental Type Certificate, Exhibit J at 1, Plaintiffs' Responses to Recon Air Corporation's Motion in Limine to Exclude the Testimony of Arthur Lee Coffman, Docket No. 349.

[4]Rebuttal Report of Findings at 1, Exhibit K. Plaintiffs' Responses to Recon Air Corporation's Motion in Limine to Exclude the Testimony of Arthur Lee Coffman, Docket No. 349 (emphasis omitted).

[5]Plaintiffs' Responses to Defendant Recon Air Corporation's Interrogatories at 2, Exhibit 5, Reply to Plaintiffs' Opposition to RAC's Motion in Limine No. 3 (Coffman), Docket No. 354.

Coffman's expert report was disclosed on December 22, 2016.[6] Coffman has 52 years of experience in the aviation industry as a mechanic, authorized inspector, service manager, and quality control manager.[7] Coffman opined that "[t]o a reasonable degree of probability the subject engine failed in-flight and was not producing power at the time of impact, due [to] the failure of the torsion shaft bushing and the torsion, causing this fatal accident."[8] In the December 2016 report, Coffman stated no opinions as to Recon Air's modification of the subject aircraft.

On August 17, 2017, Coffman was deposed. At his deposition, Coffman testified that he had "other opinions. I expressed the opinion the engine set up the scenario that started the event [but] I have other opinions about other parts of this airplane that led up to this accident that were contributing factors."[9] In particular, Coffman testified that an installer, such as Recon Air, should have flight tested the airplane after completing the 2010 modifications.[10]

---

[6] Exhibit 1, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[7] Coffman Rebuttal Report at 2, Exhibit 3, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[8] Coffman Expert Report at 5, Exhibit 1, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[9] Deposition of Arthur Lee Coffman at 93:24-94:3, Exhibit 2, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[10] Id. at 102:24-104:4.

On September 29, 2017, the report of defense expert Kenneth L. Orloff, Ph.D., was disclosed.[11] Dr. Orloff was retained to render opinions as to the "[s]tandard of care and the responsibility of maintenance personnel in the performance of major alterations by Recon Air[,]" "[o]pinions rendered by Plaintiff experts Sommer, Cochran, and Coffman[,]" [a]ircraft loading and center of gravity at the time of the accident[,]" "[s]tick-fixed longitudinal stability and control of the airplane at the time of the accident[,]" "[t]he sequence of aerodynamic events leading to the accident[,]" and "[t]he cause of the accident[.]"[12] Dr. Orloff rendered the following opinions:

- As the installer, Recon Air could reasonably rely on approved data in the Baron STOL kit Flight Manual Supplement in its assessment of compatibility with the Texas Turbine Conversion.

- Taking literally the statement "Compatibility of this modification with previously installed equipment must be determined by the installer" is unreasonable and impractical. . . .

- The cause of the accident is not related to anything Recon Air did or did not do.

- A power failure did not cause the airplane to pitch-up into a stall. The dramatic roll to the right near or at the stall is itself evidence of substantial torque being applied to the propeller.

---

[11]Exhibit H, Plaintiffs' Responses to Recon Air Corporation's Motion in Limine to Exclude the Testimony of Arthur Lee Coffman, Docket No. 349.

[12]Id. at 1.

- The accident had nothing to do with longitudinal stability and everything to do with longitudinal control. Any possible reduction in stability due to installation of the Baron STOL kit and/or the Texas Turbine Engine Conversion was not a factor in the cause of the accident.

- The proximate cause of the crash was the pilot's 1) negligent loading of the airplane that resulted in an excessively aft center of gravity, and 2) selection of landing flaps for takeoff, further increasing the amount of down-elevator deflection needed from trim, deflection that was not available.[13]

Rebuttal and supplemental reports were to be exchanged by January 30, 2018.[14]

On December 11, 2017, Coffman's rebuttal report was disclosed.[15] Coffman's rebuttal report was intended "to address the report and statements made by Mr. Kenneth L. Orloff, Ph.D." and "to address and clarify my deposition statements with regard to engine powered operational signatures that occurred at impact with the terrain."[16] Of import here, in his rebuttal report, Coffman opined that

> the installer is always responsible for the compatibility of new STC's with previously installed equipment on specific aircraft due to the fact that every aircraft is equipped differently and has to be addressed individually, case by case. Compatibility of every possible combination of STC's on an individual aircraft has to be the responsibility of the installer. Every aircraft has its

---

[13]Id. at 22.

[14]Order re Revision of Scheduling and Planning Order at 1, Docket No. 181.

[15]Exhibit 3, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[16]Id. at 1.

-5-

> own flight characteristics and must be tested individually for equipment and component compatibility before the aircraft can be determined to be airworthy and returned to service.[17]

Expert discovery closed on May 31, 2019.[18]

Recon Air now moves to exclude Coffman's opinion that Recon Air had a duty to conduct flight testing after the 2010 modification was complete and that its failure to do so was a contributing factor in causing the accident. However, in their opposition, plaintiffs clarify that Coffman is not offering a causation opinion. Plaintiffs state that "Coffman's opinion is that RAC had a duty to ensure the compatibility of the various modifications and what responsibilities that entails."[19] Plaintiffs assert that Coffman's opinion "focuses only on the responsibilities of an installer and what those responsibilities include."[20] The court has taken plaintiffs at their word and has analyzed Coffman's flight testing opinion as not being a causation opinion but rather as an opinion limited to the duties of an installer.

## Discussion

Recon Air first argues that Coffman's flight testing opinion must be excluded because it was untimely disclosed. Recon Air contends that this opinion was first disclosed at

---

[17] Id. at 2.

[18] Order re Amended Scheduling and Planning Order at 1, Docket No. 200.

[19] Plaintiffs' Responses to Recon Air Corporation's Motion in Limine to Exclude the Testimony of Arthur Lee Coffman at 11, Docket No. 349.

[20] Id.

-6-

Coffman's deposition but argues that this opinion should have been disclosed in his original expert report.

"Rule 26 requires that a testifying expert witness provide a signed report containing, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them[.]'" Allen v. Amer. Capital Ltd., 287 F. Supp. 3d 763, 794 (D. Ariz. 2017) (quoting Fed. R. Civ. P. 26(a)(2)(B)). "This requirement is meant to reduce the length of, or eliminate the need for, expert depositions." Id. While "[a]n expert may supplement, elaborate upon, [and] explain . . . his report in his oral testimony, Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." Hambrook v. Smith, Case No. 14-00132 ACK-KJM, 2016 WL 4084110, at *3 (D. Hawai'i Aug. 1, 2016) (internal citations omitted).

Recon Air argues that this is exactly what Coffman did here, that he attempted to cure deficiencies in his original expert report with his deposition testimony. Recon Air argues that Coffman's flight testing opinion cannot be considered a supplementation to his original report because it was an entirely new opinion. "[A] supplemental expert report that states additional opinions . . . is beyond the scope of proper supplementation. . . ." Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (citation omitted).

Plaintiffs, however, argue that Coffman timely disclosed his flight testing opinion in his rebuttal report. In other words, plaintiffs contend that Coffman's flight testing opinion is a rebuttal opinion. Plaintiffs argue that Coffman could offer testimony to rebut the

-7-

opinions of Dr. Orloff, who was Recon Air's expert on the duties of an installer. "Rule 26(a)(2)(C) defines rebuttal experts as presenting evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness. . . ." Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 635–36 (D. Hawai'i 2008) (citation and emphasis omitted). "As long as [the] rebuttal expert witnesses speak to the same subject matter the initial experts addressed and do not introduce novel arguments, their testimony is proper under Federal Rule of Civil Procedure 26(a)(2)(C). . . ." Laflamme v. Safeway, Inc., Case No. 3:09-cv-00514-ECR-VPC, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010). Plaintiffs argue that Coffman's rebuttal report addresses the same subject as Dr. Orloff's report, which concerned the duties of an installer. Plaintiffs argue that Coffman's flight testing opinion is not an opinion on a new or novel issue, even though it was not an opinion expressed in his initial report. Rather, plaintiffs contend that it is an opinion intended to contradict Dr. Orloff's opinions about the duties of an installer, which makes it proper rebuttal testimony.

The problem with plaintiffs' argument is that Coffman first disclosed his flight testing opinion at his deposition, which was prior to Recon Air's expert disclosure. At his deposition Coffman had nothing to rebut because there had been no defense expert disclosures. "[A]n expert cannot be said to 'rebut' testimony he or she has never seen or reviewed." Clear-View Tech., Inc. v. Rasnick, Case No. 13–cv–02744–BLF, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015). Here, it is clear that Coffman had not seen Dr.

Orloff's expert report when he first disclosed his flight testing opinion at his deposition. Thus, Coffman's flight testing opinion cannot be considered a rebuttal opinion. Rather, it is an opinion that Coffman disclosed for the first time at his deposition. This opinion should have been disclosed in Coffman's original expert report. Because it was not, plaintiffs have not complied with Rule 26 with respect to Coffman's flight testing opinion.

"Failure to comply with" the disclosure requirements of Rule 26 "prevents a party from using the expert's non-disclosed testimony 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.'" Allen, 287 F. Supp. 3d at 794 (quoting Fed. R. Civ. P. 37(c)(1)).

> "Several factors [] guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence."

Amarin Pharma, Inc. v. West-Ward Pharmaceuticals Int'l Ltd., 407 F. Supp. 3d 1103, 1116 (D. Nev. 2019) (quoting Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 242 (D. Nev. 2017)).

Recon Air argues that all of these factors weigh in favor of finding that Coffman's untimely disclosure was not substantially justified or harmless. First, Recon Air argues that it was surprised when Coffman offered his new opinion, three hours into his deposition and Recon Air argues that it was prejudiced by this unexpected testimony because its counsel could not adequately depose Coffman regarding this new opinion. Recon Air argues that it

-9-

was further prejudiced by Coffman's new opinion because he did not put it into writing until three months after his deposition, when he submitted his rebuttal report. Recon Air contends that it was not until it received Coffman's December 2017 report that it had a coherent statement as to Coffman's new opinion. Secondly, Recon Air argues that it could not easily cure this prejudice. Thirdly, Recon Air argues that there is evidence of bad faith here because Coffman is an experienced expert witness and knew that he was to disclose all of his opinions in his original report and not wait to disclose opinions at his deposition or in a rebuttal report.

While Coffman's late disclosure of the flight testing opinion may have prejudiced Recon Air, this prejudice could have been easily cured. Recon Air had ample time to re-depose Coffman before the close of expert discovery. Coffman's rebuttal report was disclosed on December 11, 2017 and expert discovery did not close until May 31, 2019. Although Recon Air complains that plaintiffs never made Coffman available or offered him to be re-deposed, Recon Air does not contend that it ever sought to re-depose Coffman. In addition, any prejudice that Recon Air may have suffered has, to quite a large degree, been cured by the fact that its experts, namely Orloff and Carducci, have had an opportunity to respond to Coffman's flight testing opinion. There is nothing to suggest that plaintiffs have acted in bad faith and allowing plaintiffs to rely on Coffman's opinion is not going to delay the trial, since no trial date has been set. Thus, the late disclosure of Coffman's flight testing opinion was harmless.

-10-

But even if Coffman's late disclosure was harmless, which it was, Recon Air argues that this opinion should still be excluded under Rule 702.

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). "Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." United States v. Ruvalcaba-Garcia, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)). Recon Air contends that Coffman's flight testing opinion is not reliable.

"'[R]eliability' . . . requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" Id. at 1188-89 (quoting Estate of Barabin v. AstenJohnson, Inc., 704 F.3d 457, 463 (9th Cir. 2014)). "The district court must assess whether 'the reasoning or methodology underlying the testimony is scientifically valid' and 'properly can be applied to the facts in issue[.]'" Id. at 1189 (quoting Daubert, 509 U.S. at 592–93). "'The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'"

City of Pomona, 750 F.3d at 1044 (quoting Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc., 738 F.3d 960, 969-70 (9th Cir. 2013)). "The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." Id. "But these factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." Id. (citation omitted).

First, Recon Air argues that Coffman is not qualified to offer his flight testing opinion. A witness may be qualified as an expert based on "knowledge, skill, experience, training, or education. . . ." FRE 702. Recon Air contends that Coffman's area of expertise is maintenance and installation of aircraft components and aircraft accident investigations. But, Recon Air argues that does not mean that Coffman is qualified to opine as to the standard of care of an installer of an STC. Recon Air contends that noticeably absent from Coffman's opinion that Recon Air should have performed flight testing is any explanation of what he means by "flight testing." Recon Air insists that Coffman should have offered an opinion as to the flight test design protocol that should have been used and that his failure to do so shows that as an aircraft maintainer he is not qualified to offer an opinion about flight testing. Recon Air contends that there is no evidence that Coffman ever participated in any flight testing coordinated with any aviation authority, ever designed a flight test protocol, or ever drafted flight test parameters. In fact, Coffman testified that flight testing is not his area of

-12-

expertise and that he "was not a part of the flight test" when he had worked on installations as a mechanic.[21] And, Coffman has not previously "testified regarding the standard of care of an installer of an STC."[22] Thus, Recon Air argues that Coffman is not qualified to offer an opinion that the standard of care for an installer includes flight testing.

Coffman is qualified to offer an opinion as to the duty of an installer based on his 52 years of experience in the aviation industry as a pilot and mechanic and his experience in maintenance quality insurance. Coffman has sufficient experience and knowledge to offer an opinion that an installer has a duty to ensure compatibility of STCs and that in this case, the installer, Recon Air, should have done so by conducting flight testing. Coffman did not need to explain all the details of what such flight testing might entail in order to establish that he is qualified to offer this opinion.

Recon Air next argues that Coffman's flight testing opinion is unreliable because it is based on insufficient facts or data. Recon Air argues that Coffman's opinion that Recon Air had a duty to do flight testing is based solely on Coffman's belief that such flight testing was required. Recon Air contends that Coffman has offered no facts or data that supports this opinion. Recon Air points out that Coffman testified that his flight testing opinion was

---

[21]Coffman Deposition at 115:21-116:13, Exhibit 7, Reply to Plaintiffs' Opposition to RAC's Motion in Limine No. 3 (Coffman), Docket No. 354.

[22]Mary Rediske's Amended and Supplemental Responses to Defendant Recon Air Corporation's Second Interrogatories and Request for Production of Documents at 2, Exhibit 4, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

-13-

formed when "discussing issues involving this accident [with t]he other experts on our team."[23] He also testified that he did not conduct any weight and balance calculations, did not attempt to locate the neutral point, or do any other type of calculations.[24] Thus, Recon Air insists that Coffman has not provided any analysis of how he reached the opinion that flight testing would have shown an incompatibility of the turbine conversion and the STOL kit.

"[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 n.14 (9th Cir. 2004) (citation omitted). Coffman explained at his deposition that his flight testing opinion is based on his experience. He testified that, in his experience, "[w]hen we put engines on airplanes and mods to the airplane, we flight-tested those mods. We made sure that their flight characteristics were all within what was acceptable."[25] Coffman's experience provides a sufficient factual basis for his flight testing opinion for purposes of Rule 702. The factual basis for this opinion may be shaky, but "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Pyramid Tech., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 813 (9th Cir. 2014) (citation omitted).

---

[23]Coffman Deposition at 98:20-25, Exhibit 2, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[24]Id. at 96:5-17.

[25]Id. at 103:1-4.

-14-

Recon Air next argues that Coffman's flight testing opinion should be excluded because it would not be helpful to a jury. Recon Air argues that simply opining that flight testing was required without providing any flight test protocols or parameters will be unhelpful. Recon Air argues that this would leave the jury with the question of whether these unexplained and undefined flight tests would have ultimately prevented the accident.

Coffman is opining as to the duty of care for an installer, which is an element of at least one of plaintiffs' claims. His flight testing opinion could be helpful to the jury.

Lastly, Recon Air argues that Coffman's entire December 2017 rebuttal report must be excluded. The first part of this report contains Coffman's flight testing opinion, which as discussed above, is not excluded. The report also contains a section titled "Engine Signatures" which pertains to Coffman's original opinion in his December 22, 2016 report and could be considered a clarification or supplementation of that opinion. This part of Coffman's December 2017 report is not excluded.

## Conclusion

Recon Air's motion in limine to exclude Coffman's flight testing opinion[26] is denied.

DATED at Anchorage, Alaska, this 21st day of April, 2020.

/s/ H. Russel Holland
United States District Judge

---

[26]Docket No. 340.