IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

In re Crash of Aircraft N93PC         )         No. 3:15-cv-0112-HRH
                                      )         [Consolidated with
on July 7, 2013, at Soldotna, Alaska  )         No. 3:15-cv-0113-HRH and
_____)         No. 3:15-cv-0115-HRH]

# O R D E R

### RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit

Defendant Recon Air Corporation moves to strike the August 2, 2019 affidavit of Colin Sommer.[1] Defendant Texas Turbine Conversions, Inc. joins in this motion.[2] This motion is opposed.[3] Recon Air has withdrawn its request for oral argument,[4] and the court deems oral argument unnecessary.

### Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take-off from the Soldotna Airport.

---

[1] Docket No. 291.

[2] Docket No. 322.

[3] Docket Nos. 318 and 319.

[4] Docket No. 358.

Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict liability and breach of warranty claims against defendants Recon Air and Texas Turbine Conversions.

The subject aircraft was modified in 2010. The modifications were approved under Supplemental Type Certificates (STCs) and included a Texas Turbine Engine Conversion and a Baron Short Takeoff & Landing (STOL) kit. The engine conversion included the installation of a Honeywell TPE331 turbine engine. Recon Air installed both the engine and the Baron STOL kit.

Colin Sommer is one of plaintiffs' retained experts. On December 22, 2016, Sommer's original expert report was disclosed. In that report, Sommer offered eleven opinions:

> 1. Pilot Rediske was qualified and properly certificated to act as pilot in command of N93PC during the subject flight.
> 2. The witness statements and video evidence of the crash are supportive of an inflight engine failure compounded with an aft center of gravity, which resulted in loss of the control of the aircraft.
> 3. Installation of the STOL kit by Recon changed the center of gravity envelope for the aircraft. The aft of limits center of gravity during the subject flight was exacerbated by the STOL kit installation.
> 4. The torsion shaft aft bushing failed and caused heavy damage and scoring to the torsion shaft aft bushing land.
> 5. The torsion shaft runout was far beyond normal specifications for type of application.
> 6. The torsion shaft in the subject Honeywell International, Inc. TPE331-10R-511C failed in-flight, shortly after departure from the Soldotna Airport in Soldotna, AK.

> > This is evidenced by the damage to the torsion shaft aft bushing land and condition of the inner diameter of the main shaft.
> 7. The condition of the compressor impellers and turbine wheel assemblies is consistent with an engine that was not producing power at impact. There was relatively little damage to the tips of the turbine blades, all turbine blades remained securely attached to the wheels and the convex surfaces of the turbine blades didn't contain a significant amount of metal spray.
> 8. The post-crash condition of impeller blade leading edges and lack of foreign object damage to the impeller is further evidence that the engine was not producing power when it impacted the ground.
> 9. Michael Selhay noted in his initial investigation a lack of metal spray and lack of foreign object debris (FOD) damage in the engine, both of which support an engine failure. Honeywell later changed their opinion to include evidence of metal spray and FOD damage when they submitted their report to the NTSB.
> 10. The propeller showed signatures of low power and high RPM at the time of impact.
> 11. Due to the sudden reduction in engine power with the aircraft in a climb attitude and an aft of limits CG, the aircraft pitched up and stalled. Pilot Rediske was unable to recover prior to impact.[5]

On August 30, 2017, Sommer was deposed. At his deposition, Sommer disclosed several additional opinions, including 1) a weight and balance calculation,[6] 2) an opinion that "according to Advisory Circular 20-188 . . . [i]t is the responsibility of the installer to determine whether a design change is compatible with previously approved

---

[5] Report of Findings, Exhibit A at 21-22, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

[6] Deposition of Colin Sommer at 27:17-20, Exhibit B, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

-3-

modifications[,]"[7] 3) a calculation of a station location for the center of gravity on the accident flight,[8] and 4) an opinion that "Recon should have done flight testing to establish what the new flight envelope was, given the fact that they implemented multiple STCs. . . ."[9] Sommer testified that the foregoing were simply support for the opinions expressed in his expert report because "some of my opinions in my report were somewhat broad. And in my deposition, as is customary, I gave all of the details and support and referenced all of the different documents that I used to develop those opinions in detail."[10] Sommer testified that he had "the opinion that just the aft center of gravity alone without the loss of the engine would not have resulted in an accident."[11] Sommer testified that absent the engine failure, the accident flight would have been a successful flight.[12]

On December 11, 2017, a rebuttal report by Sommer was disclosed.[13] Sommer stated that his rebuttal report was "being issued to address the opinions set forth within Dr. Orloff's

---

[7]Id. at 29:12-17.

[8]Id. at 34:4-9.

[9]Id. at 144:12-14.

[10]Id. at 134:14-22.

[11]Id. at 34:20-22.

[12]Id. at 180:6-15.

[13]Exhibit C, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

report relating to the crash of N93PC[.]"[14] In his rebuttal report, Sommer opined that "Recon Air's failure to determine compatibility of the installed STC's is a proximate cause of this crash."[15]

In August 2019, in support of their responses to defense motions for summary judgment, plaintiffs submitted a five-page affidavit from Sommer dated August 2, 2019.[16] In the August 2, 2019 affidavit, Sommer's averments include the following:

> 9. As I detailed in my 30 August 2017 deposition testimony, "the [subject] aircraft crash was a combination of the loss of engine power in combination with the center of gravity [CG] limits being inappropriately determined." And, "the aft center of gravity alone without the loss of the engine would not have resulted in an accident." In addition to these opinions, had Recon accurately calculated the aircraft CG limits and the engine failure still occurred, pilot Rediske would have been able to lower the nose of N93PC and conduct a forced landing straight ahead. At the time of torsion shaft failure which was denoted by the metallic sound on the iPhone video, there was more than 3,000 feet of runway remaining. Thus, there was sufficient runway available. Beyond the runway, there is additional grassy terrain.
>
> 10. As detailed in my 11 December 2017 Rebuttal Report of Findings and in my deposition, Recon failed to complete the required testing / analytical analysis to determine the cumulative effect on aircraft stability of all installed modifications that were made via Supplemental Type Certificates (STC). The failure of Recon to perform this testing as prescribed in Advisory Circular

---

[14]Id. at 1.

[15]Id. at 3.

[16]Exhibit D, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

-5-

Case 3:15-cv-00112-HRH   Document 362   Filed 04/21/20   Page 5 of 15

> 20-188 and in the STC documentation resulted in the excessively aft and dangerous center of gravity of the accident aircraft. This condition resulted in pitch up, stall and crash of the aircraft following the engine failure.[17]

Recon Air and Texas Turbines (referred to collectively as "defendants" herein) now move to strike Sommer's August 2, 2019 affidavit as an improper expert disclosure.

Discussion

"Rule 26 requires that a testifying expert witness provide a signed report containing, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them[.]'" Allen v. Amer. Capital Ltd., 287 F. Supp. 3d 763, 794 (D. Ariz. 2017) (quoting Fed. R. Civ. P. 26(a)(2)(B)). Parties have a continuing obligation to supplement expert reports "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). For expert witnesses, "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). In addition, Rule 26(a)(2)(D)(ii) provides that an expert disclosure that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C) [must be disclosed] within 30 days after the other party's disclosure." "Failure to

---

[17] Id. at 4.

-6-

Case 3:15-cv-00112-HRH   Document 362   Filed 04/21/20   Page 6 of 15

comply with" these disclosure requirements "prevents a party from using the expert's non-disclosed testimony 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.'" Allen, 287 F. Supp. 3d at 794 (quoting Fed. R. Civ. P. 37(c)(1)). But, "[e]ven though Rule 26 requires that expert disclosures be complete, 'there is no requirement that such disclosures cover any and every objection or criticism of which an opposing party might conceivably complain. In other words, an expert need not stand mute in response to an opposing party's Daubert motion.'" Star Ins. Co. v. Iron Horse Tools, Inc., Case No. CV 16–48–BLG–SPW–TJC, 2018 WL 3079493, at *6 (D. Mont. Feb. 7, 2018) (quoting Allgood v. General Motors Corp., 2006 WL 2669337, *5 (S.D. Ind. Sept. 18, 2006)).

Defendants first argue that Sommer's August 2 affidavit cannot be considered a supplement to his expert report. "'Supplementation . . . means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Reinsdorf v. Skechers U.S.A., 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013) (quoting Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998)). Rule 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." Luke v. Family Care and Urgent Medical Clinics, Case No. 08–35192, 2009 WL 886350, at *2 (9th Cir. March 30, 2009). Rule 26(e) "'does

-7-

not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report. . . .'" Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 639 (D. Hawai'i 2008) (quoting Beller ex rel. Beller v. United States, 221 F.R.D. 689, 695 (D.N.M. 2003)). "For example, courts have rejected supplemental expert reports that: 1) 'were significantly different' from the expert's original report and effectively altered the expert's theories; or 2) attempted to 'deepen' and 'strengthen' the expert's prior reports." Id. (quoting Beller, 221 F.R.D. at 695).

Defendants contend that in paragraph 9 of his August 2 affidavit, Sommer offers an entirely new opinion, an opinion that is significantly different from his original report and his deposition testimony. In paragraph 9, Sommer opines that Rediske would have been able to force land the accident aircraft "had Recon accurately calculated the aircraft CG limits and the engine failure still occurred[.]"[18] But, in his original report, Sommer opined that "[d]ue to the relative low altitude of the aircraft at the time of the stall, pilot Rediske was unable to recover."[19] Defendants thus argue that Sommer's opinion in paragraph 9 of the August 2 affidavit must be considered a new opinion, given that it contradicts his previously expressed opinion.

---

[18] August 2, 2019 Sommer Affidavit at 4, ¶ 9, Exhibit D, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

[19] Report of Findings at 19, Exhibit A, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

-8-

Plaintiffs argue that paragraph 9 does not contain any new opinions by Sommer and that Sommer's averments in paragraph 9 supplement his prior opinions. Plaintiffs contend that in paragraph 9, Sommer is merely reiterating his earlier opinion that the crash was due to the combination of the aft limits CG and the engine failure on takeoff. This opinion was expressed in his original expert report (opinions 2, 3, and 11) and at his deposition ("I indicated in my report that the aircraft crash was a combination of the loss of engine power in combination with the center of gravity limits being inappropriately determined").[20] As Sommer testified at his deposition, "[s]o my opinion is that without the engine failure, the accident doesn't occur and without the center of gravity problems, the accident doesn't occur."[21] Thus, plaintiffs insist that there are no new opinions in paragraph 9. Plaintiffs contend that defendants have cherry-picked statements from Sommer's reports and testimony but ignored his overall opinion, which was that "[t]he sudden reduction in engine power, excessive drag from the propeller and aft of limits center of gravity, caused the aircraft to pitch up and stall."[22]

As for Sommer's averment in the August 2 affidavit that Rediske could have landed the accident aircraft had there not been the aft of limits CG issue, plaintiffs argue that this

---

[20]Sommer Deposition at 25:8-11, Exhibit B, Plaintiffs' Responses to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

[21]Id. at 128:7-10.

[22]Report of Findings at 19, Exhibit A, Plaintiffs' Responses to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

-9-

statement merely expands or clarifies opinions Sommer has already provided. Plaintiffs emphasize that Sommer testified at his deposition "that without the engine failure, the accident doesn't occur and without the center of gravity problems, the accident doesn't occur."[23] Plaintiffs argue that it necessarily follows that if the engine failed and there was not the aft of limit center of gravity problem, the pilot would have been able to land on the remaining runway. In other words, plaintiffs insist that, in paragraph 9, Sommer was expanding on and clarifying his previous opinion that the crash would not have occurred but for the combination of the engine failure and the aft of limits CG issue.

Plaintiffs also argue that Sommer's opinion in the August 2 affidavit that Rediske could have forced landed the plane after the engine failure does not contradict his statement in his original report that after the stall, Rediske could not recover. In his original expert report, Sommer opined that "[d]ue to the sudden reduction in engine power with the aircraft in a climb attitude and an aft of limits CG, the aircraft pitched up and stalled. Pilot Rediske was unable to recover prior to impact."[24] Plaintiffs argue that the key word in this opinion is "stall." They contend that Sommer's opinion was that Rediske could not recover from the stall, but that a "stall" is not the same thing as an engine failure.

---

[23]Sommer Deposition at 128:7-10, Exhibit B, Plaintiffs' Responses to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

[24]Report of Findings at 22, Exhibit A, Plaintiffs' Response to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

-10-

As for paragraph 10 of Sommer's August 2 affidavit, defendants argue that it too contains a completely new opinion. In paragraph 10, Sommer opines that the failure of Recon Air to test the compatibility of all the modifications made to the accident aircraft in 2010 "resulted in the excessively aft and dangerous center of gravity of the accident aircraft" and that "[t]his condition resulted in pitch up, stall and crash of the aircraft following the engine failure."[25] In his rebuttal report, Sommer stated that "[t]he loss of engine power resulted in a loss of control authority in pitch ultimately resulting in a stall."[26] Defendants thus argue that Sommer's opinion in paragraph 10 is a new opinion because he appears to be opining that it was Recon Air's failure to properly test the modifications for compatability that resulted in the stall, while in his rebuttal report he opined that the engine failure caused the stall.

Plaintiffs argue that Sommer is not offering a new opinion in paragraph 10. Plaintiffs contend that Sommer has consistently opined that Recon Air's failure to properly test the modifications was a contributing cause of the accident. In his original report, Sommer stated that "Recon failed to investigate and determine the change in the center of gravity envelope due to the installation of the STOL kit."[27] At his deposition, Sommer testified that "Recon

---

[25]August 2, 2019 Sommer Affidavit at 4, ¶ 10, Exhibit D, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

[26]Rebuttal Report of Findings at 4, Exhibit C, Memorandum in Support of RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 292.

[27]Report of Findings at 20, Exhibit A, Plaintiffs' Responses to RAC's Motion to Strike
(continued...)

-11-

should have done flight testing to establish what the new flight envelope was, given the fact that they implemented multiple STCs and didn't have any way to correlate between the different STC holders as to what the effect on additional STCs would be."[28] And, in his rebuttal report, Sommer opined that "it was Recon's responsibility to ensure that all STC's were compatible" and that "Recon Air's failure to determine compatibility of the installed STC's is a proximate cause of this crash."[29] Plaintiffs insist that Sommer has consistently opined that the aft CG limit contributed to the accident aircraft's pitch up and stall and point out that at his deposition, Sommer testified that he was

> not saying that just the loss of the thrust vector on an empty airplane is going to make the airplane pitch up and stall. I'm saying in this accident that in combination with the aft CG and in combination with the weight and in combination with the loss of that thrust vector and even the flattening of the blades, then you end up with what we see in the video, which is the pitch up and stall of the aircraft.[30]

Thus, plaintiffs argue that paragraph 10 does not contain a new opinion by Sommer but rather that Sommer is merely expanding on or clarifying opinions he has already provided.

---

[27](...continued)
Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

[28]Sommer Deposition at 144:12-17, Exhibit B, Plaintiffs' Responses to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

[29]Rebuttal Report of Findings at 3, Exhibit C, Plaintiffs' Responses to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

[30]Sommer Deposition at 126:11-19, Exhibit B, Plaintiffs' Responses to RAC's Motion to Strike Colin Sommer's August 2, 2019 Affidavit, Docket No. 318.

-12-

Sommer's August 2 affidavit is not proper supplementation. In paragraphs 9 and 10, Sommer is not correcting inaccuracies or filling in gaps with information that was not previously available. He is offering either new opinions or attempting to strengthen or deepen his previously stated opinions, neither of which is not proper supplementation. Lindner, 249 F.R.D. at 638.

There is also some discussion in the briefing that Sommer's August 2 affidavit might be an untimely rebuttal report. Defense expert reports were provided to plaintiffs on January 30, 2019. That means that any rebuttal reports were due by March 1, 2019. Because Sommer's affidavit was not submitted until August 2, 2019, if it is a rebuttal report, it would be untimely.

Although plaintiffs do not expressly argue that Sommer's August 2 affidavit is a rebuttal report, they do argue that if it is an untimely expert disclosure, the late disclosure was harmless. An untimely expert report does not have to be excluded if the late disclosure was justified or harmless.

> "Several factors [] guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence."

Amarin Pharma, Inc. v. West-Ward Pharmaceuticals Int'l Ltd., 407 F. Supp. 3d 1103, 1116 (D. Nev. 2019) (quoting Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 242 (D. Nev. 2017)).

-13-

Plaintiffs argue that defendants cannot claim surprise because nothing in Sommer's August 2 affidavit is new, that he is merely expanding on and clarifying previous opinions. But to the extent that there would be any prejudice to defendants by the late disclosure, plaintiffs argue that this prejudice could easily be cured because defendants have already offered expert reports that rebut Sommer's opinions and he could be re-deposed on any of the issues raised in his August 2 affidavit. Plaintiffs contend that any such deposition would be short because the issues raised in Sommer's August 2 affidavit are very narrow. Plaintiffs argue that there is no likelihood that allowing the late disclosure would disrupt the trial as there is no trial date set. Plaintiffs acknowledge that defendants have filed dispositive motions, but seem to suggest that if Sommer needed to be re-deposed, the parties could do that prior to the court hearing oral argument on the summary judgment motions.

The August 2 affidavit cannot be considered a rebuttal report. Nothing in the affidavit indicates that it was prepared to rebut any testimony from any defense expert. But even if it were considered a rebuttal report, it would be untimely and the late disclosure would not be harmless as plaintiffs argue. Defendants would be prejudiced by the late disclosure of Sommer's opinions, and this prejudice could not easily be cured. If defendants were to re-depose Sommer as plaintiffs suggest, it is likely that defendants would have to refile their dispositive motions, thereby causing all of the parties to incur additional litigation costs and delaying resolution of this case, which has already been pending for over four years.

-14-

Because the court has concluded that Sommer's August 2, 2019 affidavit is improper supplemental and is not a harmless late expert disclosure, the court need not consider whether the opinions expressed by Sommer in the August 2 affidavit should be excluded as unreliable.

## Conclusion

Defendants' motion to strike Sommer's August 2, 2019 affidavit[31] is granted. Colin Sommer's August 2, 2019 affidavit is stricken from the record.

DATED at Anchorage, Alaska, this 21st day of April, 2020.

/s/ H. Russel Holland
United States District Judge

---

[31] Docket No. 291.