IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In re Crash of Aircraft N93PC | ) | No. 3:15-cv-0112-HRH |
| | ) | [Consolidated with |
| on July 7, 2013, at Soldotna, Alaska | ) | No. 3:15-cv-0113-HRH and |
| _____ | ) | No. 3:15-cv-0115-HRH] |

O R D E R

Motion to Strike August 6, 2019 Sommer Affidavit

Defendant Honeywell International Inc. moves to strike the August 6, 2019 affidavit of Colin Sommer.[1] This motion is opposed.[2] Honeywell has withdrawn its request for oral argument,[3] and the court deems oral argument unnecessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take-off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict liability and breach of warranty claims against defendants Honeywell International, Inc.; Recon Air Corporation; and Texas Turbine Conversions, Inc.

---

[1] Docket No. 298.

[2] Docket Nos. 324 and 325.

[3] Docket No. 358.

-1-

The subject aircraft was modified in 2010. The modifications were approved under Supplemental Type Certificates (STCs) and included a Texas Turbine Engine Conversion and a Baron Short Takeoff & Landing (STOL) kit. The engine conversion included the installation of a Honeywell TPE331 turbine engine. Recon Air installed both the engine and the Baron STOL Kit.

Colin Sommer is one of plaintiffs' retained experts. On December 22, 2016, Sommer's original expert report was disclosed.[4] In that report, Sommer offered eleven opinions:

> 1. Pilot Rediske was qualified and properly certificated to act as pilot in command of N93PC during the subject flight.
> 2. The witness statements and video evidence of the crash are supportive of an inflight engine failure compounded with an aft center of gravity, which resulted in loss of the control of the aircraft.
> 3. Installation of the STOL kit by Recon changed the center of gravity envelope for the aircraft. The aft of limits center of gravity during the subject flight was exacerbated by the STOL kit installation.
> 4. The torsion shaft aft bushing failed and caused heavy damage and scoring to the torsion shaft aft bushing land.
> 5. The torsion shaft runout was far beyond normal specifications for type of application.
> 6. The torsion shaft in the subject Honeywell International, Inc. TPE331-10R-511C failed in-flight, shortly after departure from the Soldotna Airport in Soldotna, AK. This is evidenced by the damage to the torsion shaft aft

---

[4]Exhibit D, Plaintiffs' Responses to Honeywell's Motion to Strike Colin Sommer's August [6] 2019 Affidavit, Docket No. 324.

> > bushing land and condition of the inner diameter of the main shaft.
> 7. The condition of the compressor impellers and turbine wheel assemblies is consistent with an engine that was not producing power at impact. There was relatively little damage to the tips of the turbine blades, all turbine blades remained securely attached to the wheels and the convex surfaces of the turbine blades didn't contain a significant amount of metal spray.
> 8. The post-crash condition of impeller blade leading edges and lack of foreign object damage to the impeller is further evidence that the engine was not producing power when it impacted the ground.
> 9. Michael Selhay noted in his initial investigation a lack of metal spray and lack of foreign object debris (FOD) damage in the engine, both of which support an engine failure. Honeywell later changed their opinion to include evidence of metal spray and FOD damage when they submitted their report to the NTSB.
> 10. The propeller showed signatures of low power and high RPM at the time of impact.
> 11. Due to the sudden reduction in engine power with the aircraft in a climb attitude and an aft of limits CG, the aircraft pitched up and stalled. Pilot Rediske was unable to recover prior to impact.[5]

On August 30, 2017, Sommer was deposed.

On September 29, 2017, Honeywell served its expert disclosures, which included reports by David Studtmann, Paul Talbert, and Thomas Gabrielson.

On October 16, 2017, Honeywell, as part of a supplemental document production, produced engineering documents for the main shaft assembly and the torsion shaft bushing, as well as the manufacturing and inspection records for the torsion shaft.

---

[5]Id. at 21-22.

-3-

Case 3:15-cv-00112-HRH   Document 364   Filed 04/22/20   Page 3 of 11

On December 11, 2017, a rebuttal report by Sommer was disclosed.[6] Sommer stated that his rebuttal report was "being issued to address the opinions set forth within Dr. Orloff's report relating to the crash of N93PC[.]"[7] Dr. Orloff is an expert retained by defendant Recon Air.

In August 2019, in support of their responses to Honeywell's summary judgment motion and motions to exclude expert testimony, plaintiffs submitted a 15-page affidavit from Sommer dated August 6, 2019. Honeywell contends that this "affidavit contains untimely and improper new, rebuttal, and cumulative opinions."[8] More specifically, Honeywell contends that:

> a. Paragraphs 1-12 contain cumulative as well as new information about Sommer's qualifications and methodologies that he allegedly employed to render opinions for this accident.
> b. Paragraph 13 contains: (1) cumulative opinions previously disclosed; (2) new rebuttal testimony to Honeywell's Daubert challenges as well as to the opinions disclosed on September 29, 2017 by Honeywell experts Thomas Gabrielson and David Studtmann; and (3) an entirely new opinion, and purported factual basis for same, regarding whether the fluctuations in the engine's RPMs could have been caused by pilot action.
> c. Paragraphs 14-18 are directed at Plaintiffs' theory that the torsion shaft sheared mid-flight and that the shear

---

[6]Exhibit D, Honeywell's Motion to Strike the New Affidavit of Colin Sommer, Docket No. 298.

[7]Id. at 1.

[8]Honeywell's Memorandum in Support of its Motion to Strike the New Affidavit of Colin Sommer at 4, Docket No. 299.

-4-

was caused by a manufacturing defect in the torsion shaft (i.e. a bend). These paragraphs contain: (1) new purported qualifications for the purpose of attempting to bolster Sommer's basis for testifying about the torsion shaft failure; (2) untimely rebuttal opinions directed at the opinions of Honeywell's expert Paul Talbert; and (3) new opinions regarding torque capacity allegedly necessary to shear the torsion shaft.[9]

Honeywell now moves to strike Sommer's August 6, 2019 affidavit because it contains improper and untimely expert opinions.

Discussion

"Rule 26 requires that a testifying expert witness provide a signed report containing, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them[.]'" Allen v. Amer. Capital Ltd., 287 F. Supp. 3d 763, 794 (D. Ariz. 2017) (quoting Fed. R. Civ. P. 26(a)(2)(B)). "The purpose of the expert disclosure rule is to 'provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" Amer. Student Financial Group, Inc. v. Aequitas Capital Management, Inc., Case No. 12–cv–2446–CAB (JMA), 2015 WL 11237474, at *1 (S.D. Cal. Sept. 15, 2015) (quoting Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc., 725 F.3d 1377, 1381 (Fed. Cir. 2013)).

---

[9]Id. at 4-5 (internal citations omitted).

Honeywell contends that the August 6 affidavit contains a number of new opinions, which cannot be considered supplementation. Parties have a continuing obligation to supplement expert reports "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). "'Supplementation . . . means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Reinsdorf v. Skechers U.S.A., 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013) (quoting Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998)). "[A] supplemental expert report that states additional opinions or 'seeks to strengthen or deepen opinions expressed in the original expert report' is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (quoting Cohlmia v. Ardent Health Servs., LLC, 254 F.R.D. 426, 433 (N.D. Okla. 2008)). "To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002).

Honeywell contends that in the August 6 affidavit, Sommer opines for the first time

    1)    that "it would have been impossible for the pilot to repetitively move the wheel by hand in a constant manner to generate a sound similar to

>       what is on the iPhone video[;]"
>
>   2)  that "the engine fluctuations which occurred on the video up to the point of impact [were] consistent with the in-flight failure of the engine and torsion shaft" and that these engine fluctuations "could not have been caused by pilot input[;]" and
>
>   3)  about the torque necessary to shear the torsion shaft.[10]

Plaintiffs dispute that Sommer's August 6 affidavit contains any new opinions. They argue that in the August 6 affidavit, Sommer is merely expanding on or clarifying his opinions.[11] Averments that "merely expand upon or clarify initial opinions that the defendants had an opportunity to test during discovery" should not be stricken. Wilson Road Development Corp. v. Fronabarger Concreters, Inc., 971 F. Supp. 2d 896, 903 (E.D. Mo. 2013). Plaintiffs insist that Sommer has consistently opined that there was engine failure on takeoff and that the torsion shaft bent before installation of the engine. As for the allegedly new opinion about the trim wheel, plaintiffs point out that at his deposition, Sommer testified that the metallic sound heard on the iPhone video would not have been made by the flaps, that "[t]he trim wheel wouldn't make that noise[,]" and that the boost pump, control surfaces,

---

[10]August 6 Sommer Affidavit at 5-6, ¶ 13a; 10, ¶ 18, Exhibit C, Plaintiffs' Responses to Honeywell's Motion to Strike Colin Sommer's August [6], 2019 Affidavit, Docket No. 324.

[11]Plaintiffs also contend that Sommer's August 6 affidavit does not contain any rebuttal opinions, a contention with which the court agrees.

-7-

and retractable gear would not have made that noise.[12] Sommer testified that "I've used dozens, hundreds of trim wheels, and I can't imagine how it would make that" noise.[13] As for the allegedly new opinion about the engine fluctuations not being caused by the pilot, plaintiffs point out that at his deposition, Sommer testified that the engine fluctuations were

> in accordance with the engine spooling down and the governor trying to control the propellor speed. So as the power's lost to the drivetrain, the governor's going to flatten out the blades in an attempt to maintain RPM. And it's going to do that somewhat cyclically because it's a hysteresis based system that is going to chase the appropriate RPM. And that would be consistent with the loss of the torsion shaft.[14]

Plaintiffs acknowledge that Sommer never expressly testified that the pilot could not have made the engine RPM fluctuations but they argue that this is a logical clarification of his opinion that the engine failure was caused by the shearing of the torsion shaft. In other words, plaintiffs contend that because it was Sommer's opinion that the engine failure was caused by the shearing of the torsion shaft, it follows that the engine failure could not have been caused by anything the pilot did. As for the allegedly new opinion about the torque necessary to shear the torsion shaft, plaintiffs argue that all Sommer is doing in the August 6 affidavit is responding to "Honeywell['s] claim[] that I made no calculations regarding the

---

[12]Deposition of Colin Sommer at 56:23-57:5, Exhibit A, Plaintiffs' Responses to Honeywell's Motion to Strike Colin Sommer's August [6], 2019 Affidavit, Docket No. 324.

[13]Id. at 27:22-23.

[14]Id. at 59:23-60:6.

-8-

erroneous reading on the torque gauge in the cockpit."[15] Plaintiffs argue that in paragraph 18 Sommer is pointing out that he did offer an opinion about torque and clarifying that his opinion did not change once he reviewed Honeywell's engineering data, which was not provided until after his deposition, and performed his own calculations based on this data.

Assuming for the sake of this order that Sommer's August 6 affidavit could be considered a supplementation of an expert's report, it was not a timely expert disclosure. The original scheduling and planning order in this case provided that "[d]isclosures and discovery responses shall be supplemented in accordance with Rule 26(e) . . . [a]s new information is acquired, but not later than 60 days before the close of discovery."[16] All discovery in this case closed on May 31, 2019.[17] Thus, any supplementation of expert reports was due by April 1, 2019. The August 6 affidavit was filed several months too late.

"Failure to comply with" with expert disclosure requirements "prevents a party from using the expert's non-disclosed testimony 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.'" Allen, 287 F. Supp. 3d at794 (quoting Fed. R. Civ. P. 37(c)(1)).

> "Several factors [] guide the determination of whether substan-
> tial justification and harmlessness exist, including (1) prejudice
> or surprise to the party against whom the evidence is offered; (2)

---

[15]August 6 Sommer Affidavit at 10, ¶ 18, Exhibit C, Plaintiffs' Responses to Honeywell's Motion to Strike Colin Sommer's August [6] Affidavit, Docket No. 324.

[16]Scheduling and Planning Order at 3-4, Docket No. 54.

[17]Order re Amended Scheduling and Planning Order at 1, Docket No. 200.

-9-

> the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence."

Amarin Pharma, Inc. v. West-Ward Pharmaceuticals Int'l Ltd., 407 F. Supp. 3d 1103, 1116 (D. Nev. 2019) (quoting Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 242 (D. Nev. 2017)).

Plaintiffs argue that the late disclosure was harmless. Plaintiffs argue that Honeywell cannot claim that it was surprised by Sommer's averments as he was merely clarifying his opinions. Plaintiffs also argue that Honeywell cannot claim prejudice because Sommer was reiterating, clarifying, or expanding on his previously expressed opinions and because Honeywell could re-depose Sommer if his August 6 affidavit were considered untimely disclosed supplementation. Plaintiffs emphasize that a trial date has not been set in this matter and that motions in limine are not due until 30 days after the court rules on dispositive motions.

The late disclosure was not harmless. The August 6 affidavit was offered in response to Honeywell's motion for summary judgment and long after Sommer was deposed. By waiting to submit Sommer's affidavit until after dispositive motions had been filed, plaintiffs have put Honeywell in the position of being unable to respond to this "clarification" of Sommer's opinions. While Honeywell could possibly re-depose Sommer, it is likely that Honeywell would then have to refile its motion for summary judgment, a motion that is fully briefed. Allowing plaintiffs to rely on this untimely disclosure would significantly disrupt

-10-

the schedule for this case and allow plaintiffs to do an end run around the timing requirements of Rule 26 and the court's scheduling and planning orders.

## Conclusion

Honeywell's motion to strike Sommer's August 6 affidavit[18] is granted. Plaintiffs may not rely on Sommer's August 6, 2019 affidavit and this affidavit is stricken from the record.

DATED at Anchorage, Alaska, this 22nd day of April, 2020.

/s/ H. Russel Holland
United States District Judge

---

[18]Docket No. 298.

-11-