WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re Crash of Aircraft N93PC<br><br>on July 7, 2013, at Soldotna, Alaska<br>_____ | No. 3:15-cv-0112-HRH<br>[Consolidated with<br>No. 3:15-cv-0113-HRH and<br>No. 3:15-cv-0115-HRH] |

O R D E R

Honeywell's Motion in Limine No. 11

Honeywell International Inc. moves to exclude plaintiffs from offering testimony about the alleged "habits" of other Alaskan pilots or DHC-3 "Otter" pilots."[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take-off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. This case involves allegations that the accident aircraft was loaded beyond the center of gravity limits ("CG limits") and that it took off with an improper flaps configuration.

At his deposition, plaintiffs' expert, Colin Sommer, somewhat inarticulately, testified

> that the use of [the accident] aircraft on this day is very typical
> and common and probably, as far as loading of these Otters go,
> on the less outside the envelope that you might see across the

---

[1]Docket No. 402.

[2]Docket No. 449.

> fleet. The fact that we were only at the time 4 inches aft – I'm sorry – 6 inches aft of the rear CG limit according to the documentation available and that we were within weight, that if it was only a weight and balance problem and that the engine was actually running, then we would see the entire fleet is being crashed. Because the method by which these operators load these airplanes is so far above and beyond what we see in this accident that we have to have a supplement cause that makes this accident happen.[3]

Sommer was also asked, "Did you draw any opinions or conclusions about the effect of the flaps being in the full down landing configuration on the handling of the aircraft on the accident flight?"[4] Sommer testified that

> [g]enerally, no. I've seen operators do this. It is not that uncommon in Alaska. They often will call it bush flaps because often they're taking off out of short strips that are rough, dirt, grass, even on water where they have rough water and they want to get off of the water as soon as possible. I've seen guys use full flaps, and then they bleed off a notch of flaps and then speed up the airplane and then climb out using climb flaps. So I don't have an opinion as to exactly what the effect is other than it isn't uncommon for operators to use full flaps to get the aircraft off the ground and then speed it up and bleed off a notch.[5]

Honeywell now moves to exclude Sommer's testimony about the habits or tendencies of Alaska pilots or Otter pilots to overload their aircraft and to take off with their flaps in full

---

[3]Video Deposition of Colin Sommer at 127:16-128:5, Exhibit A, Honeywell's Motion in Limine No. 11 [etc.], Docket No. 402.

[4]Id. at 36:8-11.

[5]Id. at 36:12-24.

-2-

down landing configuration on the grounds that it is unreliable, irrelevant, and highly prejudicial.

To be admissible, expert testimony must be both reliable and relevant. United States v. Ruvalcaba-Garcia, 923 F.3d 1183, 1188 (9th Cir. 2019). But even if expert testimony is reliable and relevant, it can still be excluded under Rule 403. "Under Rule 403, the district court can 'exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" Hardeman v. Monsanto Co., --- F.3d ---, 2021 WL 1940550, at *17 (9th Cir. 2021).

Assuming without deciding that Sommer's "habits" testimony is reliable, Sommer's testimony that it is common for Alaska pilots to take off with full flaps is irrelevant. Sommer testified that it was not uncommon for Alaska pilots to use "bush flaps" because "often they're taking off out of short strips that are rough, dirt, grass, even on water. . . ."[6] But, here, the accident pilot was not taking off from a "bush" airport; he was taking off from the Soldotna airport which has a 6000 foot-long, flat and wide concrete airstrip.

As for Sommer's testimony that it is common for Alaska pilots and/or Otter pilots to overload aircraft, assuming without deciding that this testimony is reliable and relevant, it is excluded under Rule 403. Sommer is basically testifying that Alaska pilots regularly ignore manufactured-specified and FAA-mandated weight and balance requirements.

---

[6] Id. at 36:12-16.

Allowing such testimony could mislead the jury into thinking that these requirements are guidelines that can be ignored, rather than rules that must be followed. Plaintiffs' argument that this testimony would not be prejudicial because it is being offered for the limited purpose of explaining that the mis-loading of the aircraft by itself would not have caused the accident is not well taken. Even if Sommer's overloading "habits" testimony were admitted for this limited purpose, such testimony would be far more prejudicial than probative. Hearing this testimony, a jury could very easily be misled into believing that it is okay to ignore the rules because every pilot in Alaska does so, a belief that would simply be wrong.

## Conclusion

Honeywell's motion in limine No. 11 is granted. Sommer's "habits" testimony is excluded.

DATED at Anchorage, Alaska, this 11th day of June, 2021.

/s/ H. Russel Holland
United States District Judge