WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

In re Crash of Aircraft N93PC ) No. 3:15-cv-0112-HRH
) [Consolidated with
on July 7, 2013, at Soldotna, Alaska ) No. 3:15-cv-0113-HRH and
_____) No. 3:15-cv-0115-HRH]

O R D E R

Honeywell's Motion in Limine No. 5

Defendant Honeywell International "moves to bar any argument, evidence or testimony relating to a manufacturing/defect theory different from or inconsistent with the theory [p]laintiffs submitted in response to Honeywell's Daubert and summary judgment motions."[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the

---

[1]Honeywell International Inc.'s Motion in Limine No. 5 [etc.] at 2, Docket No. 396.

[2]Docket No. 475.

estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

A Honeywell TPE 331-10R-511C turboprop engine had been installed in the accident aircraft. "The TPE331 engine is a lightweight fixed-shaft engine designed to provide primary power for fixed wing aircraft. . . ."[3] "The two stages of compressors and three stages of turbines are mounted on a common shaft and make up the power section of the engine."[4] "The torsion shaft, which is positioned concentrically inside the main shaft, extends through the length of the main shaft. The torsion shaft is driven by a spline at the end of the main shaft, and it drives the matched bearing and shaft set (high speed pinion) through a spline coupling at the front of the torsion shaft."[5] "The torsion shaft is designed to twist slightly with the application of power."[6] "The engine torque sensor gear assembly measures the engine output torque created by the angular displacement between the engine main shaft and the torsion shaft, which occurs when the engine is driving the propellor."[7] "The torsion shaft has two bushings that sit in 'lands' on the shaft . . . to keep the torsion shaft circumferentially

---

[3]Studtmann Expert Report at 3, Exhibit A, Honeywell International Inc.'s Motion for Summary Judgment, Docket No. 234.

[4]Id.

[5]Id. at 4.

[6]Id.

[7]Id.

within the main shaft."[8] It is undisputed that post-accident, the torsion shaft was found fractured.

Plaintiffs contend that the engine was not producing power at impact because the torsion shaft failed in flight. Honeywell contends that plaintiffs' experts have advanced three possible explanations for how the torsion shaft could have fractured in flight:

> (1) a bent torsion shaft created a "wobble" in the shaft that wore away at the support on end of the shaft, creating enough side load to break the shaft ("Side Load"); (2) the aft torsion shaft bushing momentarily bound to the main shaft and then released, which caused a sudden change in the torque load that sheared the torsion shaft ("Momentary Binding"), or (3) a bushing bound the torsion shaft due to improper sizing or excess heat, causing improper torque indications in the cockpit, leading the pilot to over-torque the engine and break the torsion shaft ("Bad Bushing").[9]

Honeywell contends that each of these three theories involves distinct alleged defects which would have manifested differently. For example, Honeywell contends that with the Side Load and Momentary Binding theories, the torsion shaft would have sheared without any pilot involvement but with the Bad Bushing theory, the torsion shaft would have sheared because the pilot received inaccurate flight data, which would have resulted in him actively over-torquing the engine.

---

[8] Honeywell's Memorandum in Support of its Motion for Summary Judgment at 4, Docket No. 235.

[9] Honeywell International Inc.'s Motion in Limine No. 5 [etc.] at 2, Docket No. 396.

Honeywell now moves to preclude plaintiffs from offering any argument, evidence, or testimony related to the Side Load, Momentary Binding, and Bad Bushing theories at trial.

Discussion

Honeywell first argues that argument, evidence, or testimony related to the Side Load, Momentary Binding, and Bad Bushing theories would be irrelevant and would be confusing to the jury. "Only relevant evidence, defined as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,' is admissible in federal court." Boyd v. City and County of San Francisco, 576 F.3d 938, 943 (9th Cir. 2009) (quoting FRE 401, 402). But, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

Honeywell argues that any argument, evidence, or testimony related to the Side Load, Momentary Binding, and Bad Bushing theories would be irrelevant because plaintiffs have "settled" on a different theory of liability.[10] In their response to Honeywell's Daubert motion, plaintiffs contended that "[t]he bent shaft was responsible for the aft bushing to bind the torsion shaft and the main shaft which caused the torsion shaft to shear resulting in the

---

[10] Id. at 3.

loss of power."[11] And, in their response to Honeywell's motion for summary judgment, plaintiffs made the same contention.[12] Thus, Honeywell argues that this is the theory of liability that plaintiffs have settled on. And, Honeywell contends that absent from this theory is any suggestion that the bend in the torsion shaft caused a "wobble," that the "wobble" wore away at the bushing support, that the lack of support caused a "sideload" which broke the shaft, or that the release of a bound bushing caused a sudden torque load.

On May 26, 2020, the court denied Honeywell's motion for summary judgment.[13] Honeywell contends that, in denying its motion for summary judgment, the court "permitt[ed] [p]laintiffs to proceed to trial based on evidence which the [c]ourt expressly tied to [p]laintiffs' single theory that the torsion shaft bend caused the aft bushing to bind the torsion shaft and main shaft."[14] In other words, Honeywell contends that plaintiffs are limited to pursuing this single theory at trial, that the bend in the torsion shaft caused the aft bushing to bind, and that plaintiffs cannot introduce argument, evidence or testimony that the torsion shaft sheared by some other means. If plaintiffs are limited to this single theory, then Honeywell argues that means that any reference to the Side Load, Momentary Binding,

---

[11]Plaintiff's Responses to Honeywell's Motion in Limine To Exclude the Testimony of Colin Sommer and Arthur Lee Coffman at 18, Docket No. 278.

[12]Plaintiffs' Opposition to Honeywell's Motion for Summary Judgment at 20, Docket No. 274.

[13]Docket No. 370.

[14]Honeywell International Inc.'s Motion in Limine No. 5 [etc.] at 4, Docket No. 396.

and Bad Bushing theories would be irrelevant because these theories are based "on 'bad' or 'defective' or 'oversized' bushings[,]" not a bend in the torsion shaft.[15]

Plaintiffs did rely on the bent shaft caused the binding theory in response to Honeywell's Daubert and summary judgment motion. But, that does not mean that plaintiffs are limited to this theory. Throughout the development of this case, plaintiffs have relied on several, alternative explanations for why the torsion shaft failed in flight.

Honeywell's reliance on Sikkelee v. Precision Airmotive Corporation, Case No. 4:07-CV-00886, 2021 WL 780817 (M.D. Pa. Mar. 1, 2021), is misplaced. There, Lycoming, the manufacturer of the engine in the accident aircraft, sought "to exclude any evidence of carburetor defects identified by Donald Sommer and Richard McSwain that are not alleged by Sikkelee to have played any role in the accident at issue here." Id. at *24. "Although Sikkelee argue[d] that such evidence is admissible to establish her design-defect-claim, the [c]ourt reject[ed] any notion that purported defects in the carburetor that are undeniably not linked to the accident at issue here may be introduced to prove Sikkelee's claim of a design defect in the carburetor." Id. But, here, plaintiffs are arguing and alleging that the three theories at issue are linked to the accident and are relevant to their design defect claims.

Honeywell next argues that the doctrine of judicial estoppel bars plaintiffs from offering any argument, evidence, or testimony related to the Side Load, Momentary Binding,

---

[15]Id. at 5.

and Bad Bushing theories. "The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (citation omitted).

> When determining whether judicial estoppel is warranted, [the court] look[s] to three factors: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) whether the party succeeded in its prior position, because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

United States v. Kim, 806 F.3d 1161, 1167 (9th Cir. 2015) (quoting New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001)).

Honeywell argues that the malfunction/defect theory on which plaintiffs rely is critical and any theory which deviates from the one relied on by plaintiffs in their response to Honeywell's Daubert and summary judgment motions would be inconsistent. Honeywell argues that plaintiffs twice succeeded in persuading the court to accept their bent shaft caused the bushing to bind theory. Honeywell argues that to allow plaintiffs to offer other theories at trial would suggest that the court was misled during the motion phase of the case. Honeywell also contends that it has spent the year or more since the dispositive motions were decided concentrating and focusing on plaintiffs' single theory and to allow plaintiffs to offer other theories at trial would be unfair and prejudicial to Honeywell. Thus, Honeywell argues

that plaintiffs must be limited to this one theory and as such, are barred by judicial estoppel from offering any argument, evidence, or testimony related to the Side Load, Momentary Binding, and Bad Bushing theories.

Judicial estoppel is not applicable here. Plaintiffs are not taking inconsistent positions. Rather, they have consistently taken the position that the aft bushing adhered to the torsion or main shaft. Plaintiffs have also consistently offered alternative theories as to how or why the aft bushing adhered to the torsion or main shaft. In short, plaintiffs have not solely relied on the bent shaft caused the bushing to bind theory and thus the entire premise of Honeywell's judicial estoppel argument fails.

Conclusion

Based on the foregoing, Honeywell's motion in limine No. 5 is denied.[16]

DATED at Anchorage, Alaska, this 22nd day of June 2021.

/s/ H. Russel Holland
United States District Judge

---

[16] The court would note that although the denial of this motion means that plaintiffs may offer testimony regarding the Momentary Binding theory, plaintiffs are still precluded from offering Hood's opinion and testimony on this theory, as set out in the order on Honeywell's motion in limine No. 4.