WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re Crash of Aircraft N93PC ) | No. 3:15-cv-0112-HRH |
| ) | [Consolidated with |
| on July 7, 2013, at Soldotna, Alaska ) | No. 3:15-cv-0113-HRH and |
| _____) | No. 3:15-cv-0115-HRH] |

O R D E R

Honeywell's Motion in Limine No. 10

Honeywell International Inc. moves to exclude plaintiffs from offering testimony related to what the pilot of the accident aircraft was thinking or perceiving during the accident flight.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. A Honeywell TPE 331-10R-511C turboprop engine had been installed in the accident aircraft. Plaintiffs, which are

---

[1]Docket No. 401.

[2]Docket Nos. 460, 462.

the estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

Honeywell contends that plaintiffs' experts have speculated that Rediske was looking at his torque gauge, perceived and relied on alleged erroneous data, and advanced the throttle, which somehow overtorqued and broke the torsion shaft. Specifically, Honeywell cites to Colin Sommer's deposition testimony that

> [i]f the bushing is to bind because of its location in the rear of the engine where it's much hotter due to the turbine section – if the bushing is to bind either because the bushing is improperly sized or because of the excess heat and coking, which Honeywell indicates can happen to both the shaft, the torsion shaft and the main shaft, you are now going to get an improper torque indication in the cockpit. And a pilot is going to look at his torque gauge and believe that he has less torque on his engine than he really has. And if he is to believe that torque gauge and then to apply greater torque to the engine because he believes he has a margin there – and more likely than not, this engine would have been torque-limited on this flight as opposed to temp-limited – then he could possibly overtorque the engine, breaking the torsion shaft because of the bound bushing between the two components.[3]

Honeywell also cites to Arthur Coffman's deposition testimony that

> [i]f we have binding -- the torsion shaft reads the amount -- the torque indicator reads the amount of twist that we put in the shaft from one end to the other. If we have binding at the rear bushing and it's not free to measure the twist from one end to the other, it could be causing a low torque reading in the cockpit, which the pilot may be applying more torque.

---

[3]Video Deposition of Colin Sommer at 48:5-22, Exhibit A, Honeywell's Motion in Limine No. 10 [etc.], Docket No. 401.

> \* \* \*
>
> Let's say that it's binding and he's got the engine in an overtorque mode and that binding let[s] go. It's going to apply a shock to that torsion shaft, an instant shock when it lets go if it popped loose.
>
> \* \* \*
>
> Then I think that's possible, to apply an overtorque load to the shaft.[4]

Honeywell also contends that Sommer has testified that Rediske decided to trade airspeed for altitude and attempted to continue his climb before stalling the aircraft.

Honeywell now moves to preclude plaintiffs from offering the foregoing expert evidence at trial on the grounds that it is speculative and untested.

Discussion

"Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." Guidroz-Brault v. Missouri Pacific R. Co., 254 F.3d 825, 829 (9th Cir. 2001). Honeywell first argues that expert testimony that the pilot overtorqued the engine is speculative and untested. Honeywell points out that there are no eyewitnesses who can testify about what the pilot was doing, plaintiffs' experts had never flown with the pilot or have any knowledge of his habits, and there was no black box or recordings with air traffic controllers. Thus, Honeywell argues that plaintiffs' experts have no evidence that shows that

---

[4]Video Deposition of Arthur Lee Coffman at 25:5-26:10, Exhibit B, Honeywell's Motion in Limine No. 10 [etc.], Docket No. 401.

the pilot was looking at his torque gauge, perceived and relied on alleged erroneous data, and advanced the throttle, which somehow overtorqued and broke the torsion shaft.

Honeywell also argues that plaintiffs' experts have conducted no testing to confirm their overtorquing theory. Honeywell contends that plaintiffs' experts have not tested whether a bent shaft or a bound bushing would cause a reduction in torque that would be perceptible to the pilot. Honeywell also contends that Sommer has admitted that he did not know how much horsepower would be required to "overtorque" the torsion shaft and cause it to break and that no flight testing was done by him in this case.[5] Honeywell also contends that Mark Hood, another of plaintiffs' experts, has admitted that he did not try "to calculate what the momentary torque load would be, assuming that the . . . aft bushing somehow bound and then unbound[.]"[6] Thus, Honeywell argues that any testimony from plaintiffs' experts that the pilot was looking at his torque gauge, perceived and relied on alleged erroneous data, and advanced the throttle, which somehow overtorqued and broke the torsion shaft, is untested and must be excluded.

To the extent that plaintiffs' experts have testified about what the accident aircraft pilot was doing or perceiving, such testimony must be excluded as it is pure speculation. However, the court does not rule out the possibility that an appropriate hypothetical situation

---

[5] Sommer Deposition at 49:19-22; 150:24-151:12, Exhibit A, Honeywell's Motion in Limine No. 10 [etc.], Docket No. 401.

[6] Deposition of Mark B. Hood, P.E., at 30:3-21, Exhibit C, Honeywell's Motion in Limine No. 10 [etc.], Docket No. 401.

could be put to plaintiffs' experts which would allow them to testify about what a hypothetical pilot might do. The court is not persuaded by Honeywell's argument that testimony about what a "reasonable and prudent" pilot might believe or do is too speculative or untested to potentially be admissible. Plaintiffs' experts have sufficient education, training, knowledge, skill, and experience to offer such testimony. Any "objections to the inadequacies of" of such testimony "are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002).

Honeywell also argues that Sommer's theory that the pilot traded airspeed for altitude is speculative and untested. At his deposition, Sommer was asked, "[h]ow does the plane, if it's lost power, get from 50 feet up to 125 feet?"[7] Sommer responded, "[i]t's just trading airspeed for altitude."[8] And, in his rebuttal report, Sommer stated that "[f]ollowing the engine failure, pilot Rediske traded altitude for airspeed."[9] Honeywell argues that Sommer is implying that the pilot had made a decision to pull back on the control wheel to make the plane climb in response to an engine problem, but Honeywell argues that there is no evidence of such a thought process, decision, or action by the pilot of the accident aircraft. Thus,

---

[7]Sommer Deposition at 128:22-23, Exhibit A, Honeywell's Motion in Limine No. 10 [etc.], Docket No. 401.

[8]Id. at 128:24.

[9]Aeroscope Inc. Rebuttal Report - Rediske, Exhibit E at 3-4, Honeywell's Reply in Support of Motion in Limine No. 10 [etc.], Docket No. 489.

Honeywell argues that this theory is speculative and untested and testimony related to it should be excluded.

Again, plaintiffs' experts cannot testify about what the pilot of the accident aircraft did or perceived as such testimony would be pure speculation. But, just as plaintiffs' experts can testify about what a hypothetical pilot might do, plaintiffs' experts can testify about how an aircraft, in general, might behave after it lost power.

## Conclusion

Honeywell's motion in limine No. 10 is granted. Plaintiffs' experts are excluded from offering testimony related to what the pilot of the accident aircraft was thinking or perceiving during the accident flight. But, plaintiffs' experts are not precluded from offering testimony as to what a reasonable and prudent pilot might have done under conditions similar to the accident flight or as to how an aircraft under conditions similar to the accident flight might have reacted.

DATED at Anchorage, Alaska, this 22nd day of June 2021.

/s/ H. Russel Holland
United States District Judge