IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re Crash of Aircraft N93PC ) | No. 3:15-cv-0112-HRH |
| ) | [Consolidated with |
| on July 7, 2013, at Soldotna, Alaska ) | No. 3:15-cv-0113-HRH and |
| _____) | No. 3:15-cv-0115-HRH] |

O R D E R

Honeywell's Motion in Limine No. 16

Defendant Honeywell International Inc. moves to bar application of the consumer expectation test in this case.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. A Honeywell TPE 331-10R-511C turboprop engine had been installed in the accident aircraft. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

---

[1] Docket No. 407.

[2] Docket No. 452.

In opposing Honeywell's motion for summary judgment, plaintiffs relied on the consumer expectation test.[3] In its order on the motion for summary judgment, the court determined that "[i]n terms of establishing whether the torsion shaft was defective, regardless of whether it was due to a design defect or a manufacturing defect, plaintiffs can rely on the consumer expectation test."[4] But, Honeywell contends that the court was not asked, and did not determine, whether the consumer expectation <u>should</u> apply in this case. Honeywell now asks the court to consider that question by moving to bar the application of the consumer expectation test to this case.

Discussion

As an initial matter, plaintiffs argue that the law of the case doctrine applies to this issue. "Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." Gonzalez v. Ariz., 677 F.3d 383, 389 n.4 (9th Cir. 2012). There are "exceptions to the law of the case doctrine, however, where (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." Id.

---

[3]Honeywell contends that it was during the briefing on its motion for summary judgment that plaintiffs first brought up the consumer expectation test. However, in their amended complaints, plaintiffs allege that the engine did not perform as an ordinary consumer would have expected. Docket No. 135 at 18, ¶ 87; Docket No. 137 at 11, ¶ 49.

[4]Order re Honeywell's Motion for Summary Judgment re Liability at 11, Docket No. 370.

(citation omitted). Plaintiffs argue that none of these exceptions apply and thus the law of the case is that plaintiffs can rely on the consumer expectation test.

"The law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case." Askins v. U.S. Dep't of Homeland Security, 899 F.3d 1035, 1042 (9th Cir. 2018). The court may "reconsider[] its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." Id. Thus, the law of the case doctrine does not preclude the court from reconsidering whether the consumer expectation test should apply in this case.

Turning then to that issue, in Caterpillar Tractor Co. v. Beck, 593 P.2d 871, 880 (Alaska 1979), the task before the Alaska Supreme Court was to "formulate a test which will guide the jury in design defect cases." The court adopted the "two-prong test" that had been set forth in Barker v. Lull Engineering Co., 573 P.2d 443 (Cal. 1978). Id. at 884. The Barker court had held that

> "[a] trial judge may properly instruct the jury that a product is defective in design (1) if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the plaintiff proves that the product's design proximately caused his injury and the defendant fails to prove . . . that on balance the benefits of the challenged design outweighed the risk of danger inherent in such design."

Id. (quoting Barker, 573 P.2d at 457-58). "The first prong of the Barker test -- that a product is defectively designed if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner -- incorporates notions of the

implied warranty of fitness for reasonable use, a primary concept in the evolution of strict products liability, but eases the burden of proof on the plaintiff." Id. at 884-85 (citation omitted). "The second prong of the Barker definition encompasses those situations . . . where the product satisfies ordinary consumer expectations as to its general use but is still defective in that its design exposes the user or bystander to excessive preventable danger." Id. at 885 (citation omitted).

The first prong of the Barker test is known as the "consumer expectation test." General Motors Corp. v. Farnsworth, 965 P.2d 1209, 1220 (Alaska 1998). Under the consumer expectation test, "[t]he emphasis is on the failure of safe performance, rather than on the specific reasons for the failure." Patricia R. v. Sullivan, 631 P.2d 91, 103 (Alaska 1981). But, as the Alaska Supreme Court noted in Caterpillar Tractor, "[c]onsumer expectations cannot be the exclusive test because '(i)n many situations . . . the consumer would not know what to expect, because he would have no idea how safe the product could be made.'" Caterpillar Tractor, 593 P.2d at 882 n.35 (quoting Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825, 829 (1973)). Honeywell argues that this is such a case, that a consumer would have no idea how safe an aircraft engine or torsion shaft could be made.

Honeywell primarily relies on Soule v. General Motors Corporation, 882 P.2d 298, (Cal. 1994), in support of its argument. There, after her vehicle collided with another vehicle, Soule "sued GM, asserting that defects in her automobile allowed its left front wheel to break free, collapse rearward, and smash the floorboard into her feet." Id. at 301. On

appeal, one of the questions before the court was whether "a product's design [can] be found defective on grounds that the product's performance fell below the safety expectations of the ordinary consumer if the question of how safely the product should have performed cannot be answered by the common experience of its users?" Id. (internal citation omitted). "GM suggest[ed] that the consumer expectations test is improper whenever 'crashworthiness,' a complex product, or technical questions of causation are at issue." Id. at 309. The court rejected this suggestion

> [b]ecause the variety of potential product injuries is infinite, the line cannot be drawn as clearly as GM proposes. But the fundamental distinction is not impossible to define. The crucial question in each individual case is whether the circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers.

Id. The court explained that "the consumer expectations test is reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective regardless of expert opinion about the merits of the design." Id. at 308. The court concluded that the Soule case was not such a case. Id. at 310. The court explained that Soule's "theory of design defect was one of technical and mechanical detail. It sought to examine the precise behavior of several obscure components of her car under the complex circumstances of a particular accident. The collision's exact speed, angle, and point of impact were disputed." Id. The court reasoned that "[a]n ordinary consumer of automobiles cannot reasonably expect that a car's frame, suspension, or interior will be designed to remain intact in any and all accidents. Nor

would ordinary experience and understanding inform such a consumer how safely an automobile's design should perform under the esoteric circumstances of the collision at issue here." Id. In contrast, the court noted, that "ordinary consumers of modern automobiles may and do expect that such vehicles will be designed so as not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions." Id. at 308 n.3. But, because Soule's theory of liability was much more complex and not within the realm of an ordinary consumer's experience, the court concluded that the consumer expectation test could not apply in the case. Id. at 310.

Honeywell also relies on Shanks v. Upjohn Company, 835 P.2d 1189 (Alaska 1992). Honeywell argues that in Shanks, the Alaska Supreme Court limited the scope of the consumer expectation test based on a rationale similar to that used by the Soule court. "Shanks represent[ed] the estate of a decedent who committed suicide shortly after he began taking a prescription drug manufactured by The Upjohn Company. Shanks sued Upjohn under negligence, negligence per se, strict liability design defect, strict liability failure to warn, and breach of warranty theories." Id. at 1192. One of the issues on appeal was whether the consumer expectation test "should be consistently applied in all cases, regardless of the nature of the product involved." Id. at 1194. The Alaska Supreme Court "question[ed] the significance of the expectations of the ordinary consumer in determining whether strict liability should be imposed on the manufacturer of the typical prescription drug." Id. The court reasoned that "[c]onsumers vary widely in their knowledge,

sophistication, and ability to understand and evaluate the risks associated with the use of prescription drugs, making it extremely difficult to ascertain the expectations of the 'ordinary' consumer" and because

> it is doubtful that the average consumer has the information necessary to form a reasonable expectation regarding the performance safety of most prescription products, since neither the common law nor the Federal Food Drug and Cosmetic Act require prescription drug manufacturers to provide full warning information directly to the patient/consumer.

Id. at 1194-95. The court "conclude[d] that a prescription drug is defectively designed and strict liability should be imposed on its manufacturer if the prescription drug failed to perform as safely as an ordinary doctor would expect, when used by the patient in an intended and reasonably foreseeable manner." Id. at 1195.

Honeywell argues that in Shanks, the Alaska Supreme Court narrowed the application of the consumer expectation test. And, Honeywell argues that the Alaska Supreme Court has indicated that it might be willing to further narrow the application of the consumer expectation test if given the right opportunity. In Farnsworth, "[a]fter experiencing near fatal injuries in a car accident, Kimberly Farnsworth sued General Motors (GM) in strict liability for designing a defective seat restraint system." Farnsworth, 965 P.2d at 1211. "According to Farnsworth, the accident was a moderate, frontal collision that should not have resulted in serious injuries if her restraint system had worked properly." Id. at 1212. "Farnsworth argued that she had submarined under the lap belt because GM's defective design only protected individuals the size of an average man or larger." Id. GM, on the other hand,

"argued that Farnsworth's injuries resulted not from a defect in the seat restraint system, but from the severity of the accident and her own misuse of the belt." Id. at 1213. On appeal, "GM argue[d] that the consumer expectation test does not make sense in a complex design case like this one . . . because consumers have no basis for forming expectations about how products like cars should perform in serious accidents." Id. at 1220. The court rejected GM's argument, explaining that "when a seat belt, designed to be an instrument of protection, becomes an instrument of life-threatening injury, a consumer is justified in concluding that it did not perform as safely as promised. A seat belt is a familiar product whose basic function is well understood by the general population." Id. at 1221. But in reaching this holding, the Alaska Supreme Court noted that

> Soule held that the consumer expectation test is appropriate only if consumers' everyday experience with the product allows them to form conclusions about its minimum safety features. . . . Soule . . . recognize[d] that some products may be so unfamiliar to the average consumer that it would be difficult to form any intelligent expectations about how they should perform. The issue in Soule was whether a wheel and a wheel bracket were defective because they collapsed rearward and inward during an accident. According to the plaintiff, the collapse of the wheel caused the area beneath the pedals to crumple which in turn fractured her ankles. The court ruled that the consumer expectation test was not a proper method of determining defect under those facts because [a]n ordinary consumer of automobiles cannot reasonably expect that a car's frame, suspension or interior will be designed to remain intact in any and all accidents. We do not address in this case whether, as the Soule court suggested, the consumer expectation test is inappropriate under certain facts.

Id. at 1221 n.16 (internal citations omitted).

Honeywell insists that the facts of this case make the consumer expectation test inapplicable. Honeywell argues that ordinary consumers have no experience with aviation engine torsion shafts and thus do not have everyday experience that would "allow[] them to form conclusions about its minimum safety features[.]" Id. Rather, Honeywell argues that this case involves a product that is "so unfamiliar to the average consumer that it would be difficult to form any intelligent expectations about how they should perform." Id.; see also, Pease v. Lycoming Engines, Case No. 4:10–CV–00843, 2011 WL 6339833, at *19, n.30 (M.D. Pa. Dec. 19, 2011) (citation omitted) ("[s]uffice it to say that ordinary consumers do not have reasonable minimum safety expectations which touch upon the intricate characteristics of a turbocharged TIO–540–AH1A aircraft engine"). Honeywell argues that the complexity of this case is illustrated by the fact that the parties have disclosed more than a dozen experts to testify at trial. Honeywell contends that these experts will testify about a wide range of issues such as engine operation, torsion shaft operation, metallurgical analysis of the torsion shaft surface, weight and balance studies, and flight path recreations, to name just a few. Honeywell contends that even putting aside the intricacies of the Honeywell engine itself, this case also involves a number of very specific instances of pilot error. According to Honeywell, all of this taken together makes this case so technically complex and so unfamiliar to the average consumer that the consumer expectation test should simply not apply.

First of all, contrary to what Honeywell seems to suggest, the Alaska Supreme Court has declined to narrow the consumer expectation test. The only case in which the Alaska

Supreme Court limited the application of the consumer expectation test was in Shanks, which was a pharmaceutical case, and even in that case, the Alaska Supreme Court did not abandon the consumer expectation test. Rather, the court merely determined that the ordinary consumer of prescription drugs was a doctor, not a patient.

While it may be that there are some cases that involve products that are too complex for the consumer expectation test to apply, this is not such a case. Plaintiffs "have alleged that the engine's torsion shaft failed a few seconds after takeoff, which caused a complete disconnect of the engine's power section to the propellor and resulted in a complete loss of propellor thrust."[5] An ordinary, average consumer could form intelligent expectations about how an aircraft engine should perform.

In fact, the Alaska Superior Court has found that an aircraft engine is not too complex of a product for the consumer expectation test to apply. In Curtis v. Aero-Recip, Alaska, LLC, Case No. 3AN-12-06315 CI, Curtis "was operating" a Cessna 206 that had a Teledyne Continental Motors engine "on a sightseeing flight when the engine lost all power."[6] After the accident, during the disassembly of the engine, "it was discovered that the crankshaft had fractured and separated at the number 2 journal. The crankshaft was then examined by a NTSB engineer, who found what he termed 'ladder cracking,' indicative of oil starvation,

---

[5]Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 16 [etc.] at 4, Docket No. 452.

[6]Memorandum in Support of ARA's Motion for Determination of Law of the Case [etc.], Exhibit C at 4, Honeywell's Reply in Support of its Motion in Limine No. 16 [etc.], Docket No. 504.

and leading to fatigue failure of the crankshaft."[7] The engine in the accident aircraft had been overhauled approximately one year prior to the accident and had "441 hours of flight time" on it at the time of the accident.[8] The defendant "asked the court to determine whether or not the consumer expectation test applied to [the] case" and argued "that the consumer expectation test does not apply in Alaska to products of sufficient complexity."[9] The court rejected the defendant's argument, explaining that while "the engine was undoubtedly extremely complex[,]" it "failed during routine operations well within its time between overhaul life."[10] The court concluded that "[c]onsumers can form, and probably have formed, expectations about how engines in single engine aircraft should perform under those circumstances."[11]

Honeywell argues that this is a much different case however. Honeywell contends that the primary difference between this case and Curtis is that there was no dispute in Curtis that the engine failed in flight. In contrast, in this case, the parties dispute whether the engine actually failed in flight. Plaintiffs contend that the engine did fail in flight; Honeywell contends that it did not. This difference matters, according to Honeywell,

---

[7] Id. at 5.

[8] Id. at 4.

[9] Order, Exhibit A at 1-2, Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 16 [etc.], Docket No. 452.

[10] Id. at 5.

[11] Id.

because whether an engine failed in flight is a very different, and much more complex question, than <u>why</u> the engine failed in flight. Honeywell emphasizes that the <u>Curtis</u> court did not hold that the consumer expectation test is generally appropriate in aircraft engine cases. Rather, Honeywell contends that the <u>Curtis</u> court held that, under the circumstances of that case, which involved a engine failing "during routine operations well within its time between overhaul life[.]"[12] the consumer expectation test could apply. But here, Honeywell contends that "the mere question of whether an engine failure occurred at all – before even reaching the comparably complex question of whether such failure proximately caused the crash – adds a significant complexity to this case that just did not exist in <u>Curtis</u>."[13]

     Honeywell also argues that there are a number of other differences between this case and <u>Curtis</u>. First, Honeywell contends that the <u>Curtis</u> case did not involve the pilot's interactions with the aircraft but in this case, plaintiffs' theory of liability relies on the pilot having seen improper data and then relying on this data to over-torque the engine. Second, Honeywell argues that this case involves third parties between manufacture and the accident, something that was not in play in <u>Curtis</u>. Honeywell also contends that this case did not involve "routine operations" as was the case in <u>Curtis</u> because the accident aircraft was improperly loaded and had an incorrect flap setting. In sum, Honeywell insists that the ordinary consumer

---

    [12]<u>Id.</u>

   [13]Honeywell's Reply in Support of its Motion <u>in Limine</u> No. 16 [etc.] at 7, Docket No. 504.

> lack[s] sufficient "everyday experience" with turbine engines, torsion shafts and bushings to form expectations about how they should perform when: (1) the torsion shaft was installed/removed by third parties prior to install on the subject engine, (2) the alleged defect purportedly generates bad flight data, (3) the engine allegedly fails when the pilot relies on the data and over-torques the torsion shaft, (4) following multiple pilot errors that severely compromised the stability of the aircraft.[14]

Moreover, Honeywell points out that plaintiffs' theory of liability is based on their experts' opinions that the alleged engine failure alone would not have caused the crash, that the accident would not have occurred but for the center of gravity problems plus the alleged engine failure. Thus, Honeywell argues that ordinary consumers would be required to adjust their expectations of how an aircraft engine would perform under normal circumstances, which they simply do not have sufficient everyday experience to do.

The court is not persuaded that the consumer expectation test should not apply in this case. The court believes that ordinary, average consumers could intelligently form expectations about how an aircraft engine should perform under the circumstances of this case. Thus, plaintiffs may rely on the consumer expectation test at trial. The challenge, in terms of the consumer expectation test in this case, will be to draft jury instructions that lead the jury through the factual decisions they must make so that they then can apply the law to those facts. For example, if the jury finds that the torsion shaft failed on impact with the ground, the consumer expectation test would not apply.

---

[14]Id. at 8.

Because the court has decided that the consumer expectation test may apply in this case, it must consider Honeywell's alternative argument that plaintiffs' experts should be precluded from offering testimony on the alleged defectiveness of the torsion shaft. Honeywell makes this argument because the consumer expectation test "disfavors expert testimony, and asks instead whether a layperson's common experience would indicate that the product was defective." Rhodehouse v. Ford Motor Co., Case No. 2:16-cv-01892-JAM-CMK, 2018 WL 5603614, at *2 (E.D. Cal. Oct. 29, 2018). As the Soule court explained,

> where the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect. Use of expert testimony for that purpose would invade the jury's function (see Evid. Code, § 801, subd. (a)), and would invite circumvention of the rule that the risks and benefits of a challenged design must be carefully balanced whenever the issue of design defect goes beyond the common experience of the product's users.

Soule, 882 P.2d at 308. "However, where the product is in specialized use with a limited group of consumers[,] . . . expert testimony on the limited subject of what the product's actual consumers do expect may be proper because the expectations of the product's limited group of ordinary consumers are beyond the lay experience common to all jurors." Verrazono v. Gehl Co., 50 Cal. App. 5th 636, 647 (Cal. Ct. App. 2020) (citations omitted). But Honeywell argues that this case does not involve a limited group of consumers and thus if plaintiffs are allowed to proceed on the consumer expectation test at trial, their experts should be precluded "from offering any testimony to establish any alleged defect in the

subject torsion shaft, or from offering any opinions related to the safety expectations of the ordinary consumer of torsion shafts."[15]

Plaintiffs state that their "experts will not opine what an ordinary consumer would or should expect," but they argue that their "experts should be able to testify what they expect."[16] Plaintiffs argue that Sommer and Coffman, who are both pilots, should be able to testify how they expect an aircraft engine to perform. Plaintiffs also contend that Honeywell's experts have opined that a torsion shaft can never fail absent a defect. Michael Stevensen testified that "[a]bsent a material defect, absent some kind of, you know, thermal signature indicative of a long-term overpower, you should not be able to just, at normal temperatures, fracture that shaft."[17] Dave Studtmann testified that "[h]istorically Honeywell does not have a history of torsion shaft failures in flight[.]"[18] And, Paul Talbert testified that the only thing that can sever the torsion shaft is "the sudden stoppage of a propellor due to impact[.]"[19] Thus, plaintiffs argue that the experts from both sides have the expectation that

---

[15] Honeywell's Motion in Limine No. 16 [etc.] at 12, Docket No. 407.

[16] Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 16 [etc.] at 9, Docket No. 452 (emphasis added).

[17] Videotaped Teleconference Deposition of Michael E. Stevenson, Ph.D., P.E. at 20:25-21:3, Exhibit B, Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 16 [etc.], Docket No. 452.

[18] Video Deposition of David Studtmann at 30:21-22, Exhibit C, Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 16 [etc.], Docket No. 452.

[19] Video Deposition of Paul Talbert at 13:19-24, Exhibit D, Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 16 [etc.], Docket No. 452.

a torsion shaft should not fail in flight and that an ordinary consumer would not expect differently. As such, plaintiffs argue that there is no reason why their experts cannot testify about what they would expect.

Plaintiffs' suggested approach has been rejected by other courts because the consumer expectation test "'focuses on the safety expectations of an ordinary consumer rather than those of an expert.'" St. Clair v. Nellcor Puritan Bennett LLC, Case No. 10–1275–PHX–LOA, 2011 WL 5331674, at *6 (D. Ariz. Nov. 7, 2011) (quoting Long v. TRW Vehicle Safety Systems, Inc., 796 F. Supp. 2d 1005 (D. Ariz. June 20, 2011)). The court concludes that any testimony about what plaintiffs' experts expect as to the safe performance of the engine or the torsion shaft would invade the fact-finding province of the jury and is therefore excluded.

As the court held in its order on Honeywell's motion in limine No. 8, plaintiffs' experts may not offer testimony and opinions as to what an ordinary consumer might expect in terms of the safe performance of an aircraft engine and torsion shaft. Plaintiffs' experts also cannot offer testimony as to what they might expect in terms of the safe performance of an aircraft engine and torsion shaft. But, plaintiffs' experts can offer testimony and opinions as to whether the engine failed in flight and why it might have failed in flight.

## Conclusion

Honeywell's motion to bar application of the consumer expectation test in this case is denied but its alternative motion seeking to bar plaintiffs' experts from testifying about

what ordinary consumers and they expect in terms of the performance of an aircraft engine and torsion shaft is granted.

DATED at Anchorage, Alaska, this 25th day of June 2021.

/s/ H. Russel Holland
United States District Judge