WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


In re Crash of Aircraft N93PC          )          No. 3:15-cv-0112-HRH
                                       )          [Consolidated with
on July 7, 2013, at Soldotna, Alaska   )          No. 3:15-cv-0113-HRH and
_____   )          No. 3:15-cv-0115-HRH]


O R D E R

Honeywell's Motion in Limine No. 13

Honeywell International Inc. moves to exclude hearsay conversations relied upon by plaintiffs' expert Arthur Lee Coffman.[1]  This motion is opposed.[2]  Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash.  A Honeywell TPE 331-10R-511C turboprop engine had been installed in the accident aircraft.  Plaintiffs, which are

_____

[1]Docket No. 404.

[2]Docket No. 461.

the estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

Plaintiffs retained Arthur Lee Coffman as one of their experts. Coffman has 52 years of experience in the aviation industry as a mechanic, authorized inspector, service manager, and quality control manager.[3] At his deposition, Coffman testified about conversations he has had with pilots and other persons about the aft bushing of the torsion shaft binding and causing inaccurate torque readings for the pilot.[4] Coffman testified that pilots said that they "felt" like they were getting improper torque readings because of an allegedly bound bushing.[5] Coffman testified that "there [has] been suspicion in the ag [aerial crop spraying] world" that "the rear bushing bound up and gave us an improper torque reading."[6] At his deposition, Coffman also testified that he "remember[ed] when we were up in the Toledo area. The gentleman there at National Flight, a guy that had been there 30 years said, I've never seen this much damage on one of these [torsion] shafts."[7]

---

[3]Coffman Rebuttal Report at 2, Exhibit 3, Memorandum in Support of RAC's Motion in Limine No. 3 (Coffman), Docket No. 341.

[4]Video Deposition of Arthur Lee Coffman at 22:17-24:18, Exhibit A, Honeywell's Motion in Limine No. 13 [etc.], Docket No. 404.

[5]Id. at 22:23-23:11.

[6]Id. at 22:17-25.

[7]Id. at 17:5-9.

Honeywell now moves to exclude Coffman's testimony about conversations he had with other pilots and mechanics and his testimony about what the National Flight employee said.

Discussion

Honeywell first argues that Coffman's testimony about his conversations with other pilots and mechanics about aft bushings binding should be excluded because it is inadmissible hearsay. While Honeywell acknowledges that Coffman, as an expert, may rely on inadmissible evidence, such as hearsay, Honeywell argues that vague conversations with other pilots or aviation persons are not the kind of evidence on which experts in the field normally rely. Honeywell argues that experts in the field of aircraft accident investigation would not rely on vague conversations when nothing is known about the type of aircraft, engine, or other circumstances.

Plaintiffs concede that these conversations with other pilots and mechanics are hearsay,[8] but they argue that these types of conversations with other pilots and mechanics are exactly the type of information that someone with 52 years of experience as a mechanic, inspector, maintenance administrator, and investigator would rely on. Plaintiffs argue that the best information for a mechanic about the mechanical performance of an aircraft would

---

[8]Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 13 [etc.] at 4, Docket No. 461.

come from pilots and maintenance providers for that aircraft and they offer a January 28, 2021 affidavit from Coffman to this effect.[9] Specifically, Coffman avers, in paragraph 1, that

> [a]s a mechanic, the best information about the mechanical performance of the aircraft comes from experienced maintenance providers, operators, and pilots. As an investigator the best information comes from experienced industry personnel that are the most closely associated with the types of aircraft and engines that I am investigating. This industry information is not used as the sole basis for my opinion but as a piece of the puzzle. . . .[[10]]

In response, Honeywell moves to strike this paragraph of Coffman's January 28, 2021 affidavit, arguing that it provides an additional basis for Coffman's opinions, a basis which should have been disclosed in his initial report or his rebuttal report. Honeywell argues that it is way too late for Coffman to be disclosing the bases for his opinions.

Paragraph 1 of Coffman's January 28, 2021 affidavit does not provide a new basis for Coffman's opinions. Coffman testified at his deposition that he had relied on these conversations to form some of his opinions in this case.[11] "Where . . . [the] declaration[] contain[s] no new material information and present[s] no opinions that were not provided to [the opposing party] during the course of discovery, there has been no violation of Rule 26(e) and no basis to strike." See Bona Fide Conglomerate, Inc. v. SourceAmerca, Case No.

---

[9]Affidavit of Arthur Lee Coffman at 1, ¶ 1, Exhibit C, Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 13 [etc.], Docket No. 461.

[10]Id.

[11]Coffman Deposition at 22:1-23:11, Exhibit A, Honeywell's Motion in Limine No. 13 [etc.], Docket No. 404.

3:14-cv-00751-GPC-AGS, 2019 WL 1369007, at *10 (S.D. Cal. March 26, 2019) (citation omitted).

Nonetheless, Honeywell argues that Coffman's testimony about his conversations with other mechanics and pilots should still be excluded. Honeywell argues that plaintiffs appear to believe that Coffman can testify about any conversation he has had in the last 52 years, but Honeywell argues that is simply not the case. Honeywell argues that there must be sufficient indicia of reliability for this testimony, which Honeywell contends is lacking here. Honeywell also argues that nothing in paragraph 1 of Coffman's affidavit changes that as it fails to provide any detail about these alleged conversations that Coffman had. Without any additional details about these conversations, Honeywell argues that any testimony related to the conversations is too unreliable for an expert to have relied on.

Honeywell also argues that an expert in the field would not rely on these conversations with pilots and mechanics because they are irrelevant. First, Honeywell points out that Coffman testified that "there's some ag engines running that are probably – they run longer without maintenance than they should. I know there's ag engines that don't get overhauls. They just treat them like a farm pickup."[12] Honeywell seems to be implying that the aircraft that Coffman is testifying about are quite different from the accident airplane. Honeywell also points out that Coffman testified that he was never able to determine what caused the false torque reading in these cases "[s]ince we changed so many things when it went to the

---

[12]Id. at 22:19-23.

shop, we couldn't identify just one."[13]  Honeywell also points out that Coffman testified that in none of these incidents had the torsion shaft fractured.[14]  Thus, Honeywell argues that this testimony would be irrelevant to this case which involves allegations of a fractured torsion shaft.

Coffman's testimony about his conversations with other mechanics and pilots is irrelevant because Coffman has not identified the engines or torsion shafts about which these other individuals were talking.  Experts such as Coffman may well engage in the kind of "shop talk" Coffman is repeating, but that does not mean that this talk is relevant to the particular inquiry at hand, which here has to do with the failure of a torsion shaft in a TPE331 engine.  If it were clear that these conversations involved aircraft with TPE331 engines, these conversations might well be relevant.  But without any indication that these other individuals were talking about TPE331 engines, Coffman's testimony about his conversations with other pilots and mechanics is irrelevant and is excluded.  Moreover, even if this testimony were relevant, it would still have to be excluded as it is more prejudicial than probative as it would likely confuse the jury since there is no indication that the conversations at issue related to the Honeywell TPE331 engine.

As for Coffman's testimony about what the National Flight employee said, the employee's statement was made about the torsion shaft of the <u>accident</u> aircraft during a

---

[13]Id. at 24:15-18.

[14]Id. at 24:23-25.

components inspection which was attended by counsel and experts from both sides. Thus, plaintiffs argue that this statement is the type of inadmissible hearsay on which an expert would rely. Plaintiffs offer Coffman's January 28, 2021 affidavit in support. In paragraph 3 of the January 28, 2021 affidavit, Coffman avers that

> the gentleman in Toledo, he works for a facility that is a reputable shop that specializes in the type [of] engine involved in this accident and he related his personal experience with the subject components to me, because I have no way of examining the components that are gone and I can't reliably examine the components that have been reassembled, in the state they were in at the time of the original disassembly, due to being reassembled. I used this information to assist me in my investigation but have not relied solely upon it to form my opinions in my investigation for the subject engine.[15]

Honeywell moves to strike paragraph 3 of Coffman's affidavit because it provides a new basis for Coffman's opinions and because it violates the parties' stipulation. The parties stipulated that plaintiffs would "not assert, imply, or argue that Honeywell destroyed the torsion shaft bushing during the NTSB investigation or otherwise, or that Honeywell lost or hid the bushing, or that the absence of the bushing is somehow Honeywell's fault."[16] Honeywell argues that in a portion of paragraph 3, Coffman is implying that Honeywell destroyed, lost, or hid the bushing.[17]

---

[15]Coffman Affidavit at 2, ¶ 3, Exhibit C, Plaintiffs Response in Opposition to Honeywell's Motion in Limine No. 13 [etc.], Docket No. 461.

[16]Stipulation Regarding Certain Motions in Limine at 2, ¶ 4, Docket No. 468.

[17]Although plaintiffs did not rely on paragraph 2 of Coffman's affidavit, in that
(continued...)

Coffman's averment in paragraph 3 that he relied on the National Flight employee's statement in forming his opinions is not stricken. Coffman is not providing a new basis for his opinions. Coffman testified at his deposition that he had relied on this conversation to form some of his opinions in this case.[18] "Where . . . [the] declaration[] contain[s] no new material information and present[s] no opinions that were not provided to [the opposing party] during the course of discovery, there has been no violation of Rule 26(e) and no basis to strike." See Bona Fide Conglomerate, 2019 WL 1369007, at *10 (citation omitted). To the extent that Coffman is implying in paragraph 3 that Honeywell destroyed, lost or hid the aft bushing, in light of the parties' foregoing stipulation, the court did not rely on this portion of Coffman's affidavit. Honeywell's request to strike this portion of paragraph 3 is denied.

Turning then to the question of the admissibility of Coffman's testimony about the National Flight employee's statement, the court concludes that this testimony is admissible. Because the National Flight employee's statement had to do with the TPE331 engine from the accident aircraft, this statement is the type of inadmissible hearsay an expert in the field of aircraft accident investigation would rely on. Coffman's testimony about what the National Flight employee told him is thus not excluded. But, the National Flight employee's

---

[17](...continued)
paragraph, Coffman quotes a portion of his expert report in which he states that Honeywell did not preserve component pieces of the torsion shaft. Honeywell argues that this paragraph also violates the parties' stipulation.

[18]Coffman Deposition at 16:23-17:9, Exhibit A, Honeywell's Motion in Limine No. 13 [etc.], Docket No. 404.

statement may only be disclosed to the jury as a basis for Coffman's opinions. V5 Technologies, LLC v. Switch, Ltd., 501 F. Supp. 3d 960, 964 (D. Nev. 2020). It cannot be offered "'as general proof of the truth of the underlying matter.'" Id. (quoting Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1262 (9th Cir. 1984)). If, a trial, plaintiffs offer Coffman's testimony about what the National Flight employee told him, the jury will be instructed that this "hearsay evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence." Paddack, 745 F.2d at 1262 (citation omitted).

## Conclusion

Honeywell's motion in limine No. 13 is granted in part and denied in part. It is denied as to Coffman's testimony about what the National Flight employee told him. It is otherwise granted.

Honeywell's request to strike Coffman's January 28, 2021 affidavit is denied.

DATED at Anchorage, Alaska, this 28th day of June 2021.

/s/ H. Russel Holland
United States District Judge