WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In re Crash of Aircraft N93PC | ) | No. 3:15-cv-0112-HRH |
| | ) | [Consolidated with |
| on July 7, 2013, at Soldotna, Alaska | ) | No. 3:15-cv-0113-HRH and |
| _____ | ) | No. 3:15-cv-0115-HRH] |

O R D E R

Honeywell's Motions in Limine Nos. 18 and 19

Honeywell International moves to exclude the testimony of the decedents' family members and family photos of the decedents.[1] These motions are opposed.[2] Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

---

[1]Docket Nos. 409 and 410.

[2]Docket Nos. 455 and 465.

Plaintiffs have disclosed some of the decedents' family members and personal representatives as witnesses on their final witness lists. Specifically, plaintiffs have disclosed Wayne Clayton, Ashley Clayton Underwood, Crisler Johnson, Angela McCown Welker, Maria Catherine McCown Robinette, Lawrence McManus, Kathleen McManus, Larry Kessler, Johnnie Dickert, Rachel Dickert, and Mary Rediske (referred to collectively as "the family members" herein). Plaintiffs have also disclosed photographs of the decedents when living as evidence that they intend to admit at trial.

Honeywell now moves to exclude any of the family members from testifying at trial. Honeywell also moves to exclude any photographs of the decedents.

Discussion

Honeywell first argues that none of the testimony from the family members would be relevant to any liability issues in this case. Because these witnesses were not disclosed as having any personal knowledge regarding the accident, its cause, or the pertinent events surrounding the accident, Honeywell argues that testimony from them would be irrelevant as to issues of liability.

The passenger plaintiffs are quick to point out that they have never alleged that the family members had knowledge concerning liability and that they do not intend to have the family members testify about liability. Mrs. Rediske, however, suggests that she does intend to offer testimony concerning liability, stating that she "is intimately familiar with [Mr.

Rediske's] piloting skills [and] his loading practices and business practices."[3] Mrs. Rediske points out that Honeywell noticed her deposition and then cancelled it. She seems to be implying that had Honeywell deposed her, it would have discovered that she did, in fact, have testimony relevant to liability issues.

Rule 26(a)(1)(A)(i) requires the disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses[.]" In her initial disclosures, Mrs. Rediske was disclosed as a witness who had "information about economic damages. . . ."[4] She was not disclosed as a witness who had information related to liability issues, and as far as the court is aware, Mrs. Rediske's initial disclosures were never supplemented.

> The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush. After disclosures of witnesses are made, a party can conduct discovery of what those witnesses would say on relevant issues, which in turn informs the party's judgment about which witnesses it may want to call at trial, either to controvert testimony or to put it in context. Orderly procedure requires timely disclosure so that trial efforts are enhanced and efficient, and the trial process is improved. The late disclosure of witnesses [or the subject matter of their testimony] throws a wrench into the machinery of trial.

---

[3]Plaintiffs' Opposition to Honeywell's MIL 19 [etc.] at 2, Docket No. 455.

[4]Exhibit A at 2, Honeywell's Motion <u>in Limine</u> No. 19 [etc.], Docket No. 410.

Ollier v. Sweetwater Union High School Dist., 768 F.3d 843, 862–63 (9th Cir. 2014). If Mrs. Rediske had relevant testimony as to liability issues, that information should have been disclosed in her initial disclosures or a supplement.

"A failure to comply with the fact-witness disclosure requirement imposed by Rule 26(a)(1)(A)(I) is subject to the sanctions provided in Rule 37(c)(1)." Capers v. One Beacon Ins. Co., Case No. CV 07-95-M-DWM-JCL, 2008 WL 11347701, at *2 (D. Mont. Nov. 12, 2008). Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."

> Several factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence.

Silvagni v. Wal–Mart Stores, Inc., 320 F.R.D. 237, 242 (D. Nev. 2017).

Mrs. Rediske's failure to disclose that she had relevant information concerning liability issues was not justified or harmless. The prejudice to Honeywell if Mrs. Rediske were allowed to testify about subject matters that were never disclosed could not be cured at this late date. Thus, Mrs. Rediske is precluded from offering direct testimony as to issues of liability.

However, it bears mentioning that the disclosure requirements in Rule 26(a)(1)(A)(i) do not apply to impeachment evidence. See Ardestani v. BMW of North America, LLC,

Case No. SA CV 17-00721-JDE, 2018 WL 6016956, at *4 (C.D. Cal. Oct. 15, 2018) ("Rule[] 26(a) expressly excludes from disclosure requirements documents or witnesses to be offered 'solely for impeachment'").  Mrs. Rediske, or any of the other family members, could be called as impeachment witnesses at trial, regardless of what was or was not disclosed in plaintiffs' initial disclosures.

Honeywell next argues that any testimony from the family members as to any damages issues in this case should be excluded.  First, Honeywell argues that the family members' testimony would not be relevant to the issue of economic loss.  Because plaintiffs' claims for wrongful death non-economic damages and survival claims have been withdrawn or dismissed,[5] plaintiffs' recovery in this case is limited to wrongful death economic losses sustained by the estates.  As for the passenger decedents, none of them were survived by statutory beneficiaries, so their losses are limited to pecuniary loss.  AS 09.55.580.  The Alaska Supreme Court has "defined pecuniary loss as the probable value of the deceased's estate had he not prematurely expired less the actual value of the estate at death."  <u>Portwood v. Copper Valley Elec. Ass'n, Inc.</u>, 785 P.2d 541, 542 (Alaska 1990) (citation omitted).  Honeywell argues that the passenger decedents' family members were not disclosed as having any information relating to economic loss.  Rather, Honeywell contends that the passenger plaintiffs have designated a forensic economist to calculate economic loss in this case and that the economist relied exclusively on tax returns, school records, and statistical

---

[5]Docket Nos. 62, 65-1, 282, 369, 372.

data. In fact, the passenger plaintiffs' economist testified at his deposition that he did not interview any of the passenger decedents' family members.[6] Thus, Honeywell argues that the passenger decedents' family members' testimony is not relevant to the issue of economic loss. As for Mrs. Rediske, her initial disclosure indicated that she had information relevant as to the estate's economic loss, such as "lost earnings and earnings capacity, expenses, and all other recoverable economic damages."[7] However, the estate's designated forensic economist has relied exclusively on tax returns and statistical data and did not consult with Mrs. Rediske in forming her opinions.[8] Thus, Honeywell argues that Mrs. Rediske's testimony as to economic losses would be irrelevant.

In response, the passenger plaintiffs argue that the family members' testimony is relevant to the issue of economic loss because they can testify about the decedents' education, education plans, career, future career plans, career accomplishments, work history, school history, work ethic, productivity, likelihood of retiring, and other such topics. This testimony, according to the passenger plaintiffs, is "related to the [d]ecedents ability to work, be productive, get an education, hold a job and other wise accumulate income."[9] The

---

[6]Deposition of Donald L. Frankenfeld at 22:20-24, Exhibit B, Honeywell's Motion in Limine No. 18 [etc.], Docket No. 409.

[7]Exhibit A at 2, Honeywell's Motion in Limine No. 19 [etc.], Docket No. 410.

[8]Christina Tapia Report at 1-4, Exhibit B; Deposition of Christina Tapia at 12-13, Exhibit C; Honeywell's Motion in Limine No. 19 [etc.], Docket No. 410.

[9]Plaintiffs' Response in Opposition to Defendant Honeywell's Motion in Limine No. 18 [etc.] at 3, Docket No. 465.

passenger plaintiffs point out that defense counsel questioned the family members and their economist about such topics at their depositions. They argue that Honeywell plainly intends to challenge the decedents' earning potential, thereby making the family members' testimony relevant.

Assuming without deciding that there is no disclosure problem as far as the family members' testimony regarding economic losses, this testimony would still have to be excluded. Plaintiffs have stipulated "that they will not ask the jury to award damages in an amount exceeding the admissible economic loss opinions of their economists for each decedent."[10] This stipulation makes any testimony from the family members as to economic losses irrelevant and such testimony is excluded.

Honeywell also argues that the family members' testimony is not relevant to the issue of non-economic losses because such losses are not recoverable in this case. As such, Honeywell argues that "any testimony regarding the character of the decedents, the family relationships, the family members' grief and sorrow, including how they learned of the accident, and any other testimony relating to non-economic losses should be excluded. . . ."[11]

The passenger plaintiffs do not argue that the family members' testimony is relevant to the issue of non-economic losses. But, they do argue that the decedents' character is very much at issue here and that it relates to their claims for economic damages because the

---

[10]Stipulation Regarding Certain Motions in Limine at 3, ¶ 9, Docket No. 468.

[11]Honeywell's Motion in Limine No. 18 [etc.] at 4, Docket No. 409; see also, Honeywell's Motion in Limine No. 19 [etc.] at 3, Docket No. 410 (same).

passenger plaintiffs contend that Honeywell is going to challenge whether any of the decedents would have risen to the "average." But, as discussed above, the family members' testimony as it relates to economic loss is not relevant. The same is true as to the family members' testimony as it relates to non-economic losses. Such testimony is not relevant because plaintiffs are not seeking non-economic damages in this case.

Mrs. Rediske argues that the court "would be creating new precedent to exclude testimony from the family members in a wrongful death case if it so ordered. It would deny the plaintiffs an opportunity to tell their story and obtain justice."[12] But plaintiffs do not have an unfettered right to tell their story. They only have a right to admit evidence that is relevant to their claims and the damages that they seek. The family members' testimony is irrelevant as to any damages issues because plaintiffs are not seeking non-economic damages and because such testimony has no bearing on plaintiffs' claims for economic damages as plaintiffs have agreed to rely on the calculations of their economists.

Finally, Honeywell argues that photographs of the family members and the decedents should be excluded because they are not relevant to any issues in this case. In addition, Honeywell argues that the probative value of any family photographs would be substantially outweighed by the danger of unfair prejudice by appealing to the jury's emotions and distracting them from the real issues in the case.

---

[12]Plaintiffs' Opposition to Honeywell's MIL 19 [etc.] at 4, Docket No. 455.

As one court has observed, photographs of the decedent "serve merely to . . . put a face on the decedent." Schaaf v. Midwest Transfer & Logistics, LLC, Case No. 07 C 6555, 2010 WL 3075657, at *5 (N.D. Ill. Aug. 5, 2010) (citation omitted). It is fair, reasonable, and not unduly prejudicial for one photograph of each decedent to be admitted, provided that the photographs offered into evidence are tasteful.

Conclusion

Honeywell's motions in limine Nos. 18 and 19 are granted in part and denied in part. The motions are denied as to photographs of the decedents. Plaintiffs may introduce into evidence one tasteful photograph of each decedent. The motion is otherwise granted. The family members may not testify at trial unless they are called as impeachment witnesses.

DATED at Anchorage, Alaska, this 30th day of June, 2021.

/s/ H. Russel Holland
United States District Judge