WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

In re Crash of Aircraft N93PC            )        No. 3:15-cv-0112-HRH
                                         )        [Consolidated with
on July 7, 2013, at Soldotna, Alaska     )        No. 3:15-cv-0113-HRH and
_____  )        No. 3:15-cv-0115-HRH]

O R D E R

Honeywell's Motion in Limine No. 22

Honeywell International moves to exclude Donald Frankenfeld's opinions on the economic loss sustained by the estates of Christopher and Stacey McManus and Milton and Kimberley Antonakos.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after take off from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

---

[1]Docket No. 413.

[2]Docket No. 453.

Four of the passengers, Christopher and Stacey McManus and Milton and Kimberley Antonakos, were adults. None of the four were survived by statutory beneficiaries, so their losses are limited to pecuniary loss. AS 09.55.580. The Alaska Supreme Court has "defined pecuniary loss as the probable value of the deceased's estate had he not prematurely expired less the actual value of the estate at death." Portwood v. Copper Valley Elec. Ass'n, Inc., 785 P.2d 541, 542 (Alaska 1990) (citation omitted). The passenger plaintiffs retained Donald Frankenfeld as their economist. Frankenfeld has offered opinions as to the probable value of the estate of each of the four adult decedents.[3]

Pursuant to Rule 702, Federal Rules of Evidence, Honeywell now moves to exclude Frankenfeld's opinions as to the value of the estates of the four adult decedents.

### Discussion

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). "Before admitting expert testimony into evidence, the district court must perform a

---

[3]Exhibits A, B, C, and D, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." United States v. Ruvalcaba-Garcia, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).

"'[R]eliability' . . . requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" Id. at 1188-89 (quoting Estate of Barabin v. AstenJohnson, Inc., 704 F.3d 457, 463 (9th Cir. 2014)). "The district court must assess whether 'the reasoning or methodology underlying the testimony is scientifically valid' and 'properly can be applied to the facts in issue[.]'" Id. at 1189 (quoting Daubert, 509 U.S. at 592–93). "'The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" City of Pomona, 750 F.3d at 1044 (quoting Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc., 738 F.3d 960, 969-70 (9th Cir. 2013)). "The court must assess the expert's reasoning or methodology, using as appropriate[,] criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." Id. "But these factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." Id. (citation omitted).

Honeywell first argues that Frankenfeld's opinions as to the value of the four adult decedents' estates are not reliable because he used the September 11th Victim Compensation Fund (the "Fund") to determine the amount each decedent would have spent during his or her remaining work life. Honeywell argues that the Fund was not created for use in civil

litigation and that the Fund's model is not appropriate for a case such as this. The Fund was intended to "provide compensation as an alternative to the tort system" and "was not intended to replicate tort damage awards in wrongful death actions." Colaio v. Feinberg, 262 F. Supp. 2d 273, 292 (S.D.N.Y. 2003). With respect to the consumption aspect of economic loss, the Fund developed a table of rates based on 1999 Bureau of Labor Statistics wage data and consumer spending habits.[4] The consumption "methodology adopt[ed] a number of assumptions implemented to facilitate analysis on a large scale" and "these assumptions [were] designed to benefit the claimants and [were] far more favorable than the standard assumptions typically applied in litigation."[5] Thus, Honeywell argues that Frankenfeld's use of the Fund's consumption rate tables makes his opinions as to the four adult decedents unreliable because the Fund's consumption rate tables were not developed for tort litigation such as this and were intended to favor claimants.

A personal consumption deduction is an appropriate component of the formulation of the value of a decedent's estate. Frankenfeld's use of the Fund does not render his opinions as to the value of the estates of the four adult decedents unreliable. Rather, questions about his use of the Fund "go more toward weight than admissibility." Knaack v. Knight Transportation, Inc., Case No. 3:17-cv-00172-LRH-WGC, 2019 WL 1982523, at *2 (D. Nev. May 3, 2019).

---

[4]Exhibit F at 7, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

[5]Id. at 8.

However, having elected to use the Fund, Frankenfeld cannot ignore the undisputed facts of this case in reaching his opinions as to each decedent's consumption discount. The Fund's consumption rates table was calculated, and to be applied, based on the number of dependents who survived the decedent.[6] The Fund used "different consumption rates for single decedents without dependents than for married decedents or single decedents with dependents." Colaio, 262 F. Supp. 2d at 298. The single with no dependents category was assigned the highest consumption rate.[7]

For the four adult decedents, although they died without surviving spouses or any dependents, Frankenfeld applied the "married, no children" consumption rate as opposed to the "single, no children" consumption rate. At his deposition, Frankenfeld testified that he selected the "married, no children" rate because he "believe[d it] is the appropriate one. But there are also different numbers on the schedule, which a finder of fact may believe are preferable to the number I used."[8] He further testified that the "married, no children" rate "means no children in the house . . . which is not exactly right, but it would describe" the four adult decedents' "circumstances through most of the balance" of their lives.[9] But that statement is not accurate because none of the four adult decedents were survived by their

---

[6]Id. at 7.

[7]Exhibit E at 1, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

[8]Deposition of Donald L. Frankenfeld at 61:7-10, Exhibit G, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

[9]Id. at 86:13-19.

spouse. Frankenfeld's use of the "married, no children" consumption rate "'is connected to existing data only by the ipse dixit of the expert.'" Houserman v. Comtech Telecommunications Corp., --- F. Supp. 3d ---, 2020 WL 7695695, at *1 (W.D. Wash. 2020) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

However, that does not mean that Frankenfeld's opinions as to the value of the estates of the four adult decedents must be excluded. After reaching a "core conclusion" about each decedent's earning capacity and personal consumption rate, Frankenfeld "then test[ed his] model 25 times against alternative assumptions, so that if the fact finder concludes that different earnings or consumption figures are appropriate, they can apply them to see how losses are affected."[10] These alternatives are set out in a chart (Chart III) for each adult decedent. Thus, Frankenfeld can easily adjust his opinions to use the appropriate "single, no children" consumption rate for purposes of his trial testimony.

Honeywell next argues that Frankenfeld's opinions as to the value of the four adult decedents' estates are unreliable because he improperly included awards for household services. Honeywell argues that it was improper to include awards for household services because there is no provision within the statutory recovery for pecuniary loss for household services. Honeywell contends that "[t]his makes sense because when the decedent dies without statutory beneficiaries or other dependents, as in this case, there are no surviving beneficiaries who have lost the benefit of the household services, and therefore, there is no

---

[10]Exhibit A at 4, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

corresponding recovery."[11] Honeywell points out that Frankenfeld testified that "[i]f there is no one deprived of household services, it would not be appropriate to include household services as an element of loss."[12] Frankenfeld further testified that "[i]f the kids aren't around to receive those household services, then the loss becomes something of an abstraction."[13]

Awards for household services were not properly included in Frankenfeld's opinions as to the four adult decedents given that the adult decedents had no surviving beneficiaries. But, again, that does not mean that Frankenfeld's opinions as to the four adult decedents must be excluded. Rather, Frankenfeld's inclusion of such services must be adjusted out for purposes of his trial testimony.

Honeywell next argues that Frankenfeld's opinions as to the value of the four adult decedents' estates are unreliable because he improperly included an allowance for fringe benefits, including health care benefits. Honeywell argues that there is no provision in Alaska's wrongful death statute for a beneficiary's loss of a decedent's benefits where recovery is limited to pecuniary loss. Honeywell argues that Frankenfeld admitted as much at his deposition. Frankenfeld was asked to

---

[11]Honeywell's Motion in Limine No. 22 [etc.] at 9, Docket No. 413.

[12]Frankenfeld Deposition at 119:5-7, Exhibit G, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

[13]Id. at 119:21-23.

> assume . . . no statutory beneficiaries, no dependents, so someone who say maybe is a cousin who is receiving no benefits is the personal representative and maintains the lawsuit.
>     A single person dies, no spouse, no children, a relative, first degree of consanguinity, let's assume, brings the lawsuit. I'm just wondering in that circumstance, would you calculate as part of the economic loss, whether you were for the defense or the plaintiff, fringe benefits, healthcare benefits?[14]

Frankenfeld answered that "we're being hypothetical, and I think . . . if the decedent, I'll say he, was the only beneficiary of those healthcare benefits, I don't believe it would be appropriately included as a loss."[15] Thus, Honeywell argues that Frankenfeld improperly included fringe benefits for the four adult decedents. Honeywell also suggests that the fringe benefits were improperly included because health care benefits and other fringe benefits do not tend to have residual value; either one uses them or loses them. Honeywell argues that means that such benefits would not be passed on to the estate and thus they should not be included where, as here, recovery is limited to the loss to the estate.

Frankenfeld improperly included health care benefits in his fringe benefits calculations, but that does not mean that his opinions as to the four adult decedents must be excluded. Rather, Frankenfeld's inclusion of health care benefits must be adjusted out for purposes of his trial testimony. Whether there are other fringe benefits that have been included by Frankenfeld, and whether any such other fringe benefits have a residual value

---

[14]Id. at 117:24-118:12.

[15]Id. at 118:13-17.

for purposes of the four adult decedents' estates, are proper subjects for cross-examination at trial.

Finally, Honeywell argues that Frankenfeld's opinions are not reliable because he originally failed to reduce past economic losses for income taxes. Under Alaska law, such losses must be reduced by the federal and state income taxes the decedent would have been required to pay on his estimated past earnings. Beaulieu v. Elliott, 434 P.2d 665, 673 (Alaska 1967). Frankenfeld made no such reductions in his original report but in his rebuttal report, he acknowledged that "income tax adjustments to my conclusions may be appropriate."[16] Frankenfeld then made such adjustments and offered new opinions as to the four adult decedents' past earnings.[17] Honeywell suggests that Frankenfeld may offer opinions at trial that do not include these adjustments and also suggests that Frankenfeld may have improperly applied the income tax adjustments.

Frankenfeld's treatment of income tax is not a basis for excluding his opinions as to the value of the four adult decedents' estates. Frankenfeld has made the necessary income tax adjustments and there is no reason to believe his testimony at trial will not include these adjustments. And, there is nothing to suggest that Frankenfeld improperly applied the income tax adjustment.

---

[16] Frankenfeld Rebuttal Report at 1, Exhibit H, Honeywell's Motion in Limine No. 22 [etc.], Docket No. 413.

[17] Id.

## Conclusion

Honeywell's motion in limine No. 22 is granted in part and denied in part. Frankenfeld's opinions as to the value of the four adult decedents' estates are not excluded, but Frankenfeld must, consistent with this order, make adjustments to his these opinions for purposes of his trial testimony.

DATED at Anchorage, Alaska, this 30th day of June, 2021.

/s/ H. Russel Holland
United States District Judge