IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In re Crash of Aircraft N93PC ) | No. 3:15-cv-0112-HRH |
| ) | [Consolidated with |
| on July 7, 2013, at Soldotna, Alaska ) | No. 3:15-cv-0113-HRH and |
| _____) | No. 3:15-cv-0115-HRH] |

O R D E R

Plaintiffs' Motion in Limine No. 4

Plaintiffs move to exclude some of the opinions and testimony of expert Robert Carducci.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

On July 7, 2013, a deHavilland DHC-3 "Otter" airplane operated by Rediske Air, Inc. and piloted by Walter Rediske crashed shortly after takeoff from the Soldotna Airport. Rediske and all of the passengers on board were killed in the crash. Plaintiffs, which are the estates of the passengers and Rediske, assert wrongful death, negligence, strict product liability, and breach of warranty claims against Honeywell.

---

[1]Docket No. 425.

[2]Docket No. 464.

Robert Carducci was retained as a defense expert. He issued a 35-page expert report, in which he offered a number of opinions.[3] Pursuant to Rule 702, plaintiffs now move to exclude some of Carducci's opinions and testimony.

Discussion

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). "Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." United States v. Ruvalcaba-Garcia, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).

"Relevancy simply requires that 'the evidence logically advance a material aspect of the party's case.'" Id. (quoting Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591.

---

[3]Exhibit A, Plaintiffs' Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

"'[R]eliability' . . . requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" Ruvalcaba-Garcia, 923 F.3d at 1188-89 (quoting Barabin, 704 F.3d at 463). "The district court must assess whether 'the reasoning or methodology underlying the testimony is scientifically valid' and 'properly can be applied to the facts in issue[.]'" Id. at 1189 (quoting Daubert, 509 U.S. at 592–93). "'The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" City of Pomona, 750 F.3d at 1044 (quoting Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc., 738 F.3d 960, 969-70 (9th Cir. 2013)). "The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." Id. at 1044. "But these factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." Id. (citation omitted).

Plaintiffs first move to exclude Carducci's opinions about the accident aircraft's weight and balance. Plaintiffs argue that these opinions are based entirely on three NTSB studies,[4] which plaintiffs contend, as they did in their motion in limine No. 3, are inadmissible. Plaintiffs argue that an expert in a civil action cannot offer an opinion if that opinion is

---

[4]These studies are discussed in detail in the court's order on plaintiffs' motion in limine No. 3 which is being entered concurrently with this order.

-3-

based on an NTSB report or study containing the NTSB's determinations or conclusions. See United States Aviation Underwriters, Inc. v. Aerospatiale, Societe Nationale Industrielle, S.A., Case No. CIV 02-0824-PHX-EH, 2005 WL 8161454, at *5 (D. Ariz. Nov. 1, 2005) (excluding expert's opinion that was based on NTSB briefs which "explicitly list[ed] the NTSB's determination of the probable cause of the reported accident"). Plaintiffs contend that the three NTSB studies all contain NTSB opinions and conclusions and that when read together, the three studies comprise the complete NTSB probable cause determination. Thus, plaintiffs argue that any opinions by Carducci about the weight and balance of the aircraft must be excluded.

By way of example, plaintiffs cite to Carducci's opinions which are found in paragraphs 4.8 and 4.9 of his report. In paragraph 4.8, Carducci opines that

> [t]he DHC-3 had been loaded prior to the accident flight such that it had a center of gravity much further aft than was permitted by the FAA-certified operating limitations. That condition was hazardous to the operation of the aircraft and a violation of FAA operating rules. It put the lives of the passengers at risk.[5]

In paragraph 4.9, Carducci opines that

> [t]he DHC-3 center of gravity was far aft of the aft limit on the accident flight when the aircraft gross weight was close to 8000 lbs due to the improper loading by the pilot. That center of gravity created a much larger nose-up pitching moment beyond that certified for the aircraft which made the aircraft uncontrol-

---

[5]Carducci Report, Exhibit A at 33, Plaintiffs' Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

-4-

lable with respect to nose-down pitch control when the aircraft climbed above significant ground effect.[6]

Plaintiffs argue that these opinions are unreliable because they are based entirely on the NTSB weight and balance study. Plaintiffs argue that all Carducci is doing in the opinions in paragraphs 4.8 and 4.9 is parroting the NTSB. "An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the matters at issue." Zakaria v. Gerber Products Co., Case No. LA CV15-00200 JAK (Ex), 2017 WL 9512587, at *7 (C.D. Cal. Aug. 9, 2017). "'An expert is of course permitted to testify to an opinion formed on the basis of information that is handed to him rather than developed by him—information of which he lacks first-hand knowledge and which might not be admissible in evidence no matter by whom presented[. But,] the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence.'" Id. (quoting Matter of James Wilson Assocs., 965 F.2d 160, 172-73 (7th Cir. 1992)). "'An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions.'" Id. (quoting Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 534, 544 (C.D. Cal. 2012)).

Carducci testified that he relied on the determinations that the NTSB made in Scenario 6 in the weight and balance study.[7] He testified that he relied on the NTSB's determinations

---

[6]Id.

[7]Deposition of Robert Carducci at 80:5-24, Exhibit G, Plaintiffs Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

that Scenario 6 was the most accurate scenario and that he relied on the NTSB's center of gravity calculations.[8] Because Carducci did not do his own independent analysis related to the center of gravity issues, plaintiffs argue that his opinions in paragraphs 4.8 and 4.9 (as well as any other weight and balance opinions) are unreliable. Plaintiffs argue that allowing Carducci to offer these opinions would be akin to admitting the NTSB weight and balance study even though this study itself is not admissible.

As another example, plaintiffs cite to paragraph 2.11.7 in Carducci's report, which reads:

> The graph below is a plot of the airspeed, altitude and pitch angle with respect to time for the accident takeoff as determined by the NTSB. This kinematic study performed by the NTSB shows that the aircraft had lifted off the runway at the 11-second mark as shown on the graph and annotated by me as "LIFT-OFF". After liftoff, it began climbing out of significant ground-effect and increasing its airspeed from about 62 mph to 68 mph (100 ft/sec, the solid line) at the point on the graph at the 13-second mark. The airspeed stopped increasing and remained constant for about a second. At the 14-second mark, the airspeed began decreasing rapidly indicating that engine power had reduced significantly. I have annotated the 14-second point on the graph below as "DRASTIC REDUCTION IN AIR-SPEED".[9]

But, Carducci testified that he did not "do any triangulation or measurements, or geometry" to come up with any of the information on the graph but rather "[t]he NTSB did that and I

---

[8]Id.

[9]Carducci Report, Exhibit A at 21, Plaintiffs Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

-6-

relied on them."[10] More specifically, Carducci testified that the graph being discussed in paragraph 2.11.7 came "from the NTSB[,]" from "the kinematic study and the video study[,]" and that he did not do any of his "own independent analysis or calculations" as regards the graph but rather was "relying on the NTSB."[11] Given the number of problems with the kinematics study, which plaintiffs set out in greater detail in their motion in limine No. 3, plaintiffs argue that any of Carducci's weight and balance opinions or testimony that are based on the kinematics study must be excluded as unreliable.

In the order deciding plaintiffs' motion in limine No. 3, which is being entered concurrently with this order, the court has held that the NTSB studies are not admissible. But, that does not mean that Carducci's weight and balance opinions, which rely on these studies, should be excluded. "[I]t is well established that an expert witness may rely on hearsay or any other evidence that experts in the particular field would reasonably rely on in forming an opinion on the subject." United States v. Pacific Chemical Int'l, Inc., Case No. CV 14-7203-MWF (PJWx), 2019 WL 4451214, at *3 (C.D. Cal. April 25, 2019). There is no question that aviation accident experts rely on NTSB reports and studies, as evidenced by the fact that plaintiffs' own experts relied on the same NTSB reports and studies that plaintiffs now contend are unreliable and inadmissible.

---

[10]Carducci Deposition at 97:7-11, Exhibit G, Plaintiffs Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

[11]Id. at 82:5-22.

As for plaintiffs' argument that Carducci did not do any independent testing, that also does not mean that Carducci's weight and balance opinions must be excluded. "Under Rule 703, an expert may rely on tests not performed by him if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" Romero by and through Ramos v. S. Schwab Co., Case No. 15-CV-815-GFC-MDD, 2017 WL 5885543, at *10 (S.D. Cal. Nov. 29, 2017) (quoting Fed. R. Evid. 703). "'[N]umerous courts have held that reliance on scientific test results prepared by others may constitute the type of evidence that is reasonably relied upon by experts for purposes of Rule of Evidence 703.'" Id. at *5 (quoting Monsanto Co. v. David, 516 F.3d 1009, 1015 (Fed. Cir. 2008)). The NTSB reports and studies contain the kind of facts or data on which an expert in the field would rely. Carducci was not required to "reinvent[] the wheel" but rather could rely on the NTSB studies in forming his opinions. Livingston v. Isuzu Motors, Ltd., 910 F. Supp. 1473, 1497 (D. Mont. 1995) (citation omitted).

At his deposition, Carducci testified that the NTSB reports, including the weight and balance and kinematics studies, were

> detailed. For example, the weight and balance portions of the report were quite detailed. They went into all of the cargo, looked at what was damaged, what possibly had burned up, what containers contained liquids. So it wasn't a real quick and dirty report. It was well thought out.[12]

---

[12]Carducci Deposition at 17:16-18:9, Exhibit A, Honeywell's Opposition [etc.], Docket No. 464.

Carducci also testified that he thought the video study "was quite well done."[13] Plainly, Carducci reviewed the NTSB materials to ensure that they were reliable. He was not, as plaintiffs' contend, simply parroting the NTSB conclusions and findings. Thus, Carducci's weight and balance opinions and testimony are not subject to exclusion.

Plaintiffs next argue that Carducci's opinions about "the pilot's manipulation of the aircraft's flight throttle" should be excluded because they are opinions which are connected to the existing data only by the ipse dixit of the expert.[14] For example, in paragraph 4.12 of his report, Carducci states that "[t]he pilot [of the accident aircraft] applied power and likely cycled the engine power during that climb in an attempt to overcome the uncontrollable situation in an attempt to pitch the aircraft nose-down by varying the engine power."[15] Similarly, in paragraph 2.11.10 of his report, Carducci states that "the pilot likely reduced the engine power significantly as he struggled with the lack of nose-down elevator control in an attempt to land on the remaining runway."[16] At his deposition, Carducci testified that these statements or opinions were based "on the reduction in air speed that I saw versus the altitude

---

[13]Id. at 18:16-18.

[14]Plaintiffs' Motion to Exclude Testimony of Defendants Expert Robert Carducci at 18, Docket No. 425.

[15]Carducci Report, Exhibit A at 34, Plaintiffs' Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

[16]Id. at 22.

-9-

gain. So I know he wasn't using the whole 900 horsepower all the way up."[17] But plaintiffs argue that Carducci really has no way of knowing what the accident pilot was doing and thus Carducci's opinions about what the accident pilot was doing during the accident sequence should be excluded.

A similar issue was presented in Honeywell's motion in limine No. 10. There, the court held that plaintiffs' experts could not testify about what the pilot of the accident aircraft was thinking or perceiving during the accident sequence but that they could offer "testimony as to what a reasonable and prudent pilot might have done under conditions similar to the accident flight or as to how an aircraft under conditions similar to the accident flight might have reacted."[18] The same holds true for Carducci. He may testify as to what a reasonable and prudent pilot might have done, but he cannot testify as to what Mr. Rediske was thinking or perceiving during the accident sequence. However, that is not to say that Carducci cannot offer opinions and testimony as to what actions he believes the accident pilot was taking at specific points during the accident sequence. There are inferences that can be drawn from the facts that are available as to what the pilot might have been doing in the cockpit during the accident sequence. Carducci may offer testimony as to the inferences that he has been able to draw from, among other things, the physical evidence, the Talkeetna flight testing, and his own experience as a pilot. Plaintiffs can, of course, attack this testimony on cross-

---

[17]Carducci Deposition at 93:8-15, Exhibit G, Plaintiffs' Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

[18]Order re Honeywell's Motion in Limine No. 10 at 6, Docket No. 523.

-10-

examination if they do not agree with it, but Carducci is not precluded from offering such testimony.

Finally, plaintiffs argue that Carducci's opinion that the pilot did not do a weight and balance computation should be excluded. At his deposition, Carducci was asked whether it was his "opinion that Rediske did not compute weight and balance for the accident flight?"[19] Carducci responded: "I can't prove that, but more likely than not. Based on the NTSB data being accurate, I'd have to say he didn't."[20] Plaintiffs argue that Carducci should not be permitted to offer an opinion as to what Mr. Rediske might have done on the day of the accident because such an opinion is nothing more than speculation.

The court agrees. Carducci's opinion as to whether Mr. Rediske did a weight and balance computation on the day of the accident is speculation. Thus, Carducci is precluded from offering any opinion or testimony as to whether Mr. Rediske did or did not do a weight and balance computation on the day of the accident.

## Conclusion

Plaintiffs' motion to exclude some of Carducci's opinions and testimony is granted in part and denied in part. The motion is granted as to any testimony or opinions from Carducci about what the accident pilot might have been thinking or perceiving the day of the accident and as to any testimony or opinions as to whether or not the accident pilot did or did

---

[19] Carducci Deposition at 110:18-20, Exhibit G, Plaintiffs' Motion to Exclude Testimony of Defendants Expert Robert Carducci, Docket No. 425.

[20] Id. at 110:21-23.

not do a weight and balance computation on the day of the accident. The motion is otherwise denied.

DATED at Anchorage, Alaska, this 4th day of August, 2021.

/s/ H. Russel Holland<br>
United States District Judge